John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Morgan & Morgan Complex Litigation Group
201 North Franklin Street 7th Floor
Tampa, Florida 33602
(813) 223-5505 (tel)
(813) 223-5402 (fax)

Joshua H. Watson
**CLAYEO C. ARNOLD, APC**
865 Howe Ave
Sacramento, CA 95825

*Counsel for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN RICHARDS, RUBA AYOUB, BRANDY TERBAY AND TRACY CUMMINGS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>CHIME FINANCIAL, INC., GALILEO FINANCIAL TECHNOLOGIES, INC., and THE BANCORP INC.,<br><br>        Defendants. | **CASE NO. 4:19-cv-06864**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE Plaintiffs Ryan Richards, Ruba Ayoub, Brandy Terbay, and Tracy Cummings ("Plaintiffs") will and hereby do respectfully move the Court for entry of an Order (1) preliminarily approving the Settlement Agreement; (2) certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); (3) approving and ordering dissemination of the proposed class notice and forms of the Notice Program set forth in the Settlement Agreement; (4) appointing Plaintiffs as Settlement Class Representatives; (5) appointing as Lead Counsel John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and as Class Counsel Patrick A. Barthle II of Morgan & Morgan Complex Litigation Group and Joshua H. Watson of Clayeo C. Arnold, APC, all to serve as counsel for the Settlement Class ("Class Counsel") under Rule 23(g); (6) appointing Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator; and (7) scheduling a Final Approval Hearing at a date convenient for the Court.

Plaintiffs' motion is based on this notice; the accompanying Memorandum of Points and Authorities and all attachments thereto (including the Settlement Agreement); the Proposed Order Granting Preliminary Approval of Class Action Settlement; and all records, pleadings and papers filed in this Action.  This Motion is unopposed by Defendants.

DATED: August 7, 2020                    Respectfully submitted,

                                         /s/ John A. Yanchunis
                                         **MORGAN & MORGAN**
                                         **COMPLEX LITIGATION GROUP**
                                         John A. Yanchunis
                                         201 North Franklin Street 7th Floor
                                         Tampa, Florida 33602
                                         (813) 223-5505
                                         (813) 223-5402 (fax)

                                         *Proposed Lead Counsel*

**Table of Contents**

NOTICE OF MOTION ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 1

III.    THE PROPOSED SETTLEMENT .......................................................................... 5

        A.      Overview of the Proposed Settlement ............................................................ 5

                1.      The Proposed Settlement Class ........................................................... 5

                2.      Settlement Relief .................................................................................. 5

                3.      Notice to the Class ............................................................................... 7

                4.      Opt-Out and Objection Procedures ...................................................... 8

                5.      Notice and Administrative Costs .......................................................... 9

                6.      Attorneys' Fees, Costs, and Service Awards ........................................ 9

                7.      Release ................................................................................................ 10

IV.     ARGUMENT ........................................................................................................... 10

        A.      The Court Should Certify the Settlement Class ............................................ 10

                1.      The Settlement Class Meets the Requirements of Rule 23(a) ............ 10

                2.      The Settlement Class Meets the Requirements of Rule 23(b)(3). ..... 11

                3.      The Court Should Appoint Class Counsel. ........................................ 11

        B.      The Settlement Merits Preliminary Approval ............................................... 12

                1.      Adequacy of Relief: Costs, Risks, and Delay ................................... 14

                2.      Adequacy of Relief:  Proposed Method of Distributing Relief ........ 18

3. Adequacy of Relief:  Attorneys' Fees ................................................. 18

4. Rule 23(e)(3) Agreements and Equality of Treatment. .................................. 18

C. The District's Procedural Guidance ................................................................. 20

1. Sub-Factors 1(a) & 1(c): Classes and Claims Alleged v. Settled ................... 20

2. Sub-Factor 1(e): Anticipated Recovery v. Settlement Amount ...................... 20

3. Sub-Factor 1(g): Expected Claims Rates ........................................................ 21

4. Factor 2: Administrator Selection ................................................................... 21

5. Factors 3-5: Notice Program, Opt-Outs, and Objections ................................ 21

6. Factors 6 & 7: Attorneys' Fees, Costs, and Expenses; Service Awards; Cy Pres; Timeline; and CAFA .............................................................................. 22

7. Factor 11: Past Distributions .......................................................................... 23

D. The Court Should Order Dissemination of Class Notice as Proposed ......................... 23

1. The Notice Program Provides the Best Method of Notice Practicable. ............ 23

2. The Proposed Notices Adequately Inform Settlement Class Members ............ 24

3. Notice of the Settlement Will Be Provided to Appropriate Officials. .............. 24

E. The Court Should Set a Schedule for Final Approval .................................................. 25

III. CONCLUSION ......................................................................................................... 25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864

# TABLE OF AUTHORITIES

**Cases**

*Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) ............................................................................................................................... 18

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ........................................................... 10

*Fuentes v. UniRush, LLC* No. 1:15-cv-08372, ECF No. 49 (S.D.N.Y. Sept. 12, 2016) ..................... 12

*Fulton-Green v. Accolade, Inc.*, 2:18-cv-00274 (E.D. Pa.) ....................................................... 21

*G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *14 (N.D. Cal. July 30, 2015) ............................................................................................................................... 18

*Haley v. Medtronic, Inc*., 169 F.R.D. 643, 650-51 (C.D. Cal. 1996) ........................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ............................................ 10, 11

*Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *10 (N.D. Cal. Sept. 29, 2016) ............................................................................................................................... 15

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865 ...... 13

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015). .......................... 19, 24

*In re Sony Gaming Network & Customer Data Breach and Security Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) ................................................................................................................ 14

*In re Sony PS3 Litig.*, No. 10-CV-01911-YGR, 2017 WL 5598726, at *16 (N.D. Cal. Nov. 21, 2017) ...................................................................................................................................... 24

*In Re: MagSafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *2 (N.D. Cal. May 29, 2012) ...................................................................................................... 25

*Jones v. Commerce Bank, N.A.*, 2006 WL 2642153, *2 (S.D.N.Y 2006) ........................................ 14

*Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *4 (N.D. Cal. Sept. 10, 2012) ............................................................................................................................... 16

*Kuhns v. Scottrade*, 868 F.3d 711, 718 (8th Cir. 2017) ........................................................... 14

*Lewis v. Green Dot Corporation*, Case No. 2:16-cv-03557 .......................................................... 12

*Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, *et al.*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ....................................................................................................................... 13

*Milano v. Interstate Battery Sys. of Am., Inc.*, No. 4:10-DV-02125 (N.D. Cal. July 5, 2012) .......... 25

*Miller v. Bank of Am. N.T. & S.A.*, 2014 WL 5091897, *11 (Cal. Super. 2014) ............................... 14

*Nelson v. Roadrunner Transportation Systems, Inc.*, 1:18-cv-07400 (N.D. Ill.) .............................. 21

*Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) ........................................ 10

*Parsons v. Kimpton Hotel & Restaurant Group, LLC*, 3:16-cv-05387 (N.D. Cal.) ......................... 21

*Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). ..................... 19, 20

*Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, *8 (S.D.N.Y. 2019) ......................................... 14

*Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) ........................................................................................................................................... 19

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 322 (C.D. Cal. 2016) ........................................ 11, 24

*Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003). ........................................................... 19

*Stern v. Superior Court*, 129 Cal. Rptr. 2d 275, 282 (Cal. Ct. App. 2003). ................................ 16

*Turner v Talbert*, 2011 WL 4479766, *2 (M.D. La. 2011) ......................................................... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) ...................... 10, 11

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ................................................................................. 24

**Other Authorities**

Manual for Complex Litigation, § 21.632 ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................................................... 10

Fed. R. Civ. P. 23(b)(3) .............................................................................................................. 11, 23

Fed. R. Civ. P. 23(c)(2)(B). ........................................................................................................ 23, 24

Fed. R. Civ. P. 23(e). .................................................................................................................. 13, 23

Fed. R. Civ. P. 23(e)(1)(B)(ii) ...................................................................................................... 13

Fed. R. Civ. P. 23(e)(2) ................................................................................................................. 12

Fed. R. Civ. P. 23(e)(3) ............................................................................................................ 18, 20

Fed. R. Civ. P. 23(g)(1)(A). .......................................................................................................... 12

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I. INTRODUCTION

3

This Action was brought by Plaintiffs, individually and on behalf of a class of similarly

4

situated customers, against Defendants Chime Financial, Inc. ("Chime"), The Bancorp Inc.

5

("Bancorp"), and Galileo Financial Technologies, LLC (formerly known as Galileo Technologies,

6

Inc.) ("Galileo") (collectively, "Defendants"), arising from an intermittent disruption in service for

7

portions of the period of time between October 16, 2019 and October 19, 2019 (the "Service

8

Disruption").[1]  After extensive discussions, including multiple settlement conferences with United

9

States Magistrate Judge Laura Beeler, and an exchange of information regarding the facts

10

surrounding the Service Disruption, the Parties reached a resolution of this Action.  Significantly, the

11

proposed Settlement Agreement ("Settlement" or "Settlement Agreement") provides significant

12

relief to address the claims of the Settlement Class, including $5,960,563.00 in payments that have

13

already been made to Settlement Class Members for any inconveniences and losses resulting from

14

the Service Disruption, and up to an additional $5.5 million on a claims-made basis—split between

15

two alternative tiers of compensation (Tiers 1 and 2) available to the Settlement Class—against

16

which Settlement Class Members may file claims for losses resulting from the Service Disruption.

17

*See* SA § IV.1-3. Subject to the terms of the Settlement Agreement, Defendants will only be

18

obligated to pay validated claims.  If the amount of valid Claims is less than the Tier 1 and 2

19

Maximums, Defendants will retain any unclaimed amount.  Defendants, however, have committed to

20

make a minimum payment of $1.5 million.  In the event that the aggregate amounts under Tier 1 and

21

Tier 2 do not add up to $1.5 million, the difference up to $1.5 million will be paid to the Parties'

22

proposed *cy pres* recipient, East Bay Community Law Center, as directed and approved by the

23

Court. SA § IV.5.  Plaintiffs hereby move unopposed for preliminary approval of the Settlement.

24

## II. BACKGROUND

25

Chime is an online-only service started in 2013 as an alternative to traditional brick and

26

mortar banks.[2] Since its inception, Chime has attracted more than five million new account holders,

27

28

---

[1] Capitalized terms used herein are defined in the Settlement Agreement ("SA"), attached hereto as **Exhibit A**.
[2] As used herein, when discussing accounts and services "Chime" refers to the Chime products and services.  When referring to a party, "Chime" refers to Defendant Chime Financial, Inc.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864

giving it the largest customer base of any digital challenger bank in the U.S.[3]  Chime markets primarily to millennials and others who make $35,000 to $70,000 a year—the segment of the population that relies heavily on debit cards to pay for everyday expenses while attempting to stay within budget.[4]  One of Chime's biggest selling points to its cost sensitive customers has been its "no hidden fees" approach to creating a transaction account—meaning no overdraft fees, no monthly maintenance or service fees, no minimum balance, and no charges on foreign transactions.[5] Critical to Chime's success is providing customers immediate access to their funds with minimal cost. Chime customers receive a debit card, a Spending Account (aka checking account), a Savings Account, and a phone App that is iPhone and Android compatible.  Chime is the program manager for deposit accounts administered by Bancorp, for which Galileo acts as a processor (the "Accounts"). SA § I.A.

From October 16, 2019 to October 19, 2019, some Chime accountholders experienced intermittent disruptions in service.  For example, for approximately four and a half non-consecutive hours during the Service Disruption, card purchases for certain members were unavailable; and for approximately 60 hours, certain members could not transfer money from their Chime accounts. These issues were intermittent during the Service Disruption period and did not impact all Chime customers. Rather, in connection with the Action and the Settlement, Defendants have identified approximately 528,000 accountholders that had an account open with Chime during the Service Disruption who experienced a transaction failure or had an account or card locked during the Service Disruption.  SA § III.1.

Immediately upon learning of the Service Disruption, Class Counsel worked vigorously to remedy the harms imposed on the Settlement Class.  This Action was filed on October 22, 2019. (ECF No. 1).  Upon filing, Chime and Bancorp received a demand from Lead Counsel seeking

---

[3] *Chime now has 5 million customers and introduces overdraft alternative*, Tech Crunch, September 4, 2019, https://techcrunch.com/2019/09/04/chime-now-has-5-million-customers-and-introduces-overdraft-alternative/
[4] *This branchless bank quadrupled its customer base to 4 million in a single year*, CNBC, June 17, 2019 https://www.cnbc.com/2019/06/12/chime-has-quadrupled-its-customer-base-to-4-million-in-a-single-year.html
[5] *Chime Bank disrupting the banking industry with fintech*, MarketWatch, January 31, 2019, https://www.marketwatch.com/press-release/chime-bank-disrupting-the-banking-industry-with-fintech-2019-01-31

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864

compensation for impacted customers.  In recognition of the pendency of this Action and having received the demand, Settlement Class Members with an active Chime account received a credit to their account in the amount of ten dollars ($10.00), on or about November 14, 2019.  SA § IV.1.a. Moreover, Settlement Class Members with an active Chime account who incurred certain transaction fees during the Service Disruption received a credit to cover those fees.  SA § IV.1.b.  The total amount already paid to the Settlement Class from Plaintiffs' efforts is $5,960,563.00. SA § IV.1.c.

On February 6, 2020, counsel for the Parties attended an initial settlement conference in front of United States Magistrate Judge Laura Beeler.  The conference was held in San Francisco, California to discuss the facts and the law underlying the Action.  Counsel for the Parties engaged in discussions regarding the factual circumstances of the case, as well as potential strengths and weaknesses of the allegations in support of, and defenses to, the Action.  Following that meeting, counsel for Plaintiffs made a settlement demand on Defendants to resolve this matter.  SA § I.D; Declaration of John A. Yanchunis ¶ 18 (hereinafter, "JAY Dec."), attached hereto as **Exhibit B**.

During the months that followed, counsel for the Parties continued discussions via multiple telephone conferences and correspondence exchanges.  Counsel continued to exchange proposals and discuss resolution, as disclosed to the Court in their Stipulation and Proposed Order to extend the case stay on March 19, 2020. (ECF No. 30). On May 7, 2020, after weeks of additional negotiations, Counsel for the Parties attended an additional settlement videoconference in front of Judge Beeler to discuss preliminary settlement terms and structure. On May 12, 2020, with the assistance of Judge Beeler, the Parties reached an agreement in principle with regard to the material terms of the proposed settlement, as memorialized in this Settlement Agreement.  JAY Dec. ¶ 19.

As explained in greater detail below, in addition to the benefits already afforded to the Settlement Class, the Settlement provides two alternative tiers of relief to compensate Settlement Class Members for inconveniences and losses as a result of the Service Disruption.  These alternative tiers allow Settlement Class Members to make a claim for either undocumented losses (Tier 1) or for documented losses (Tier 2). Defendants have agreed to pay allowed claims under Tiers 1 and 2 of up to $5.5 million, but in any event will make a minimum settlement fund payment

of $1,500,000, taking into account claimed amounts under either Tier, which $1,500,000 will not revert to Defendants.  Should amounts claimed under Tier 1 and Tier 2, when combined, fail to exhaust the $1,500,000 fund, any difference between the claimed amounts and $1,500,000 will be subject to a *cy pres* distribution to the East Bay Community Law Center or such other *cy pres* recipient or recipients as directed and agreed to by the Court.  SA § IV.  Subject to the terms of the Settlement Agreement, Defendants are not creating a settlement fund beyond the $1.5 million dollars but instead will only pay validated claims up to the Tier Maximums.  Should the amounts claimed not reach the Tier Maximums, Defendants will retain those funds.

Defendants will also separately bear the costs of class notice and other costs associated with administering the Settlement at a fixed sum price of no more than $250,000.  SA § VI.3. Defendants will also separately pay Class Counsel's attorneys' fees, costs, and expenses, not to exceed $750,000 in the aggregate, and Service Awards not to exceed $500 per Settlement Class Representative. These fees, costs, and expenses, and the Service Awards, will be paid by Defendants separate and apart from the relief provided to Settlement Class Members; that is, the fees, cost, and expenses and Service Awards will not reduce the benefits and payments to the Settlement Class Members provided by the Settlement Agreement.  SA § X.1-2.

After investigating the facts and carefully considering applicable law, the Named Plaintiffs and Class Counsel have concluded that it is in the best interests of the Settlement Class Members to enter into the Settlement in order to avoid the uncertainties of litigation and to assure meaningful and timely benefits to the Settlement Class Members.  For the reasons stated herein, the Named Plaintiffs and Class Counsel respectfully submit that the terms and conditions of this Settlement are fair, reasonable, and adequate and in the best interests of all Members of the Settlement Class.

Accordingly, the Named Plaintiffs respectfully request that the Court enter an Order (1) preliminarily approving the Settlement; (2) certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); (3) approving and ordering dissemination of the proposed class notice and forms of the Notice Program set forth in the Settlement Agreement; (4) appointing Named Plaintiffs as Settlement Class Representatives; (5) appointing as Lead Counsel John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and as Class Counsel Patrick

A. Barthle II of Morgan & Morgan Complex Litigation Group and Joshua H. Watson of Clayeo C. Arnold, APC, all to serve as counsel for the Settlement Class ("Class Counsel") under Rule 23(g); (6) appointing Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator; and (7) scheduling a Final Approval Hearing at a date convenient for the Court.

## III.   THE PROPOSED SETTLEMENT

### A.   Overview of the Proposed Settlement

#### 1.   The Proposed Settlement Class

The Settlement contemplates relief for the following proposed Settlement Class:

> All consumers who attempted to and were unable to access or utilize the functions of their accounts with Chime, as confirmed by a failed transaction or a locked card as recorded in Chime's business records, beginning on October 16, 2019 through October 19, 2019, as a result of the Service Disruption.

SA § III.1. For purposes of determining membership in the Settlement Class, Chime has identified approximately 528,000 accountholders that had an account open with Chime during the Service Disruption who experienced a transaction decline due to the processor outage and/or had an account or card locked at any time from October 16 to 19, 2019, and these criteria will be used for determining Settlement Class membership, for purposes of notice, and for the claim validation processes described below.  SA § III.1.[6]

#### 2.   Settlement Relief

The valuable benefits made available pursuant to the Settlement squarely address the issues raised in the litigation and provide significant relief to the Settlement Class Members.

##### a)   Courtesy Payment and Transaction Credits

To compensate Settlement Class Members for inconveniences and losses as a result of the Service Disruption, and in recognition of the pendency of this class litigation and a demand for compensation for impacted customers from Lead Counsel, Defendants have already provided two valuable benefits.  Settlement Class Members with an active Chime account received a credit to their account in the amount of $10.00 on or about November 14, 2019.  SA § IV.1.a.  And Settlement Class Members with an active Chime account who incurred certain transaction fees during the

---

[6] Excluded from the Settlement Class are the Court, the officers and directors of Defendants, persons who have been separately represented by an attorney and entered into a separate settlement agreement in connection with the Service Disruption, and persons who timely and validly request exclusion from the Settlement Class.  S.A. § III.2.

Service Disruption received a credit to cover those fees. SA § IV.1.b.  The total amount already paid or credited to Settlement Class Members as part of this class relief is $5,960,563.00.  SA § IV.1.c.

### b)  Additional Tiered Relief

Defendants have agreed to provide the following additional relief to Settlement Class Members who make valid and verified claims under the two mutually exclusive tiers of relief:

### 1)  Tier 1 Claims – Payments for Losses Without Documentation

Settlement Class Members who claim they suffered a financial or other loss because of the Service Disruption, but do not have or do not wish to provide Reasonable Documentation, will be eligible for a payment up to $25.00.  SA § IV.2.a.  Tier 1 payments will be reduced by any prior payments Settlement Class Members already received from Chime in connection with the Service Disruption.  SA § IV.2.b.  Defendants have agreed to pay up to $4 million to satisfy valid Tier 1 claims.  SA § IV.2.c.  If the amount of valid Tier 1 Claims is less than $4 million, the difference between the claimed amount and the Tier 1 Maximum, (the "Tier 1 Residue"), will be made available to fully or partially satisfy Tier 2 claims.  SA § IV.2.c. If the amount of valid Tier 1 Claims, net of offsets, exceeds $4 million, each claim will be reduced on a *pro rata* basis.  SA § IV.2.c.

### 2)  Tier 2 Claims – Payments for Substantiated Losses

Alternatively, settlement Class Members who provide Reasonable Documentation of Substantiated Losses will be eligible for a payment of the amount of loss proven up to $750.00. SA § IV.3.a. Tier 2 payments will also be reduced by any prior payments Settlement Class Members already received from Chime in connection with the Service Disruption. SA § IV.3.b.  Defendants have agreed to pay up to $1.5 million to satisfy valid Tier 2 claims. SA §§ IV.3.c and IV.5.  Should the total value of valid Tier 2 claims exceed $1.5 million, plus the Tier 1 Residue, if any, then all payments will be reduced on a *pro rata* basis.  SA § IV.3.c.  If the amount of valid Claims is less than $4 million for Tier 1, or $1.5 million for Tier 2, Defendants will retain any unclaimed amounts, except to the extent that Tier 1 Residue funds are necessary to fully or partially satisfy Tier 2 claims. SA §§ IV.2.c; IV.3.c.  For the avoidance of doubt, Defendants will pay only the verified claims made under Tiers 1 or 2. *Id.* With the exception of the $1.5 million minimum, non-reversionary

payment, from which both claims made under Tier 1 and Tier 2 will initially be drawn, Defendants are not creating a settlement fund as part of the Settlement.  *Id.*

Class Members may seek to participate in either Tier 1 or Tier 2, but not both. SA § IV.4.

### c) Minimum Contribution

Taking into account claimed amounts under either Tier 1 or Tier 2, Defendants will make a minimum settlement fund payment of $1,500,000, which amount will not under any circumstances revert to Defendants.  Should amounts claimed under Tier 1 and Tier 2, when combined, fail to exhaust the $1,500,000 fund, any such excess will be subject to a *cy pres* distribution to the East Bay Community Law Center as directed and agreed to by the Court. SA § IV.5.

### d) Claims Verification Process

Tier 1 and Tier 2 Claims will be subject to a two-part verification process. SA §§ IV.2.a, 3.a., 6.b, 6.c. Settlement Class Members did not have to submit any Claim Form or documents to receive benefits under the Courtesy Payment and Transaction Credits. SA § IV.1. To receive cash payment under Tiers 1 or 2, however, Settlement Class Members must submit a valid Claim Form by the Claims Deadline. SA § IV.6.a. Under both Tiers, Settlement Class Members must submit, under penalty of perjury, an explanation as to what losses they incurred as a result of the Service Disruption. SA § IV.6.b. Additionally, the Settlement Administrator and Chime will confirm according to Chime's business records that the Settlement Class Member held a Chime account and attempted a financial transaction that failed or had their card locked as a direct result of the Service Disruption. *Id.* To receive payment under Tier 2, Settlement Class Members must also submit Reasonable Documentation to support their losses. SA § IV.6.c. Any Tier 2 Claim submitted without Reasonable Documentation will be processed as a Tier 1 Claim. SA § IV.6.d.

### 3. Notice to the Class

The Settlement provides a comprehensive Notice Program developed with the assistance of Epiq, a firm that specializes in settlement administration and development of class action notice plans.  The Notice Program has two components: (1) E-mail Notice and (2) Notice on the Settlement Website. SA § VII.2. The Settlement Administrator shall e-mail a copy of the E-mail Notice to all Settlement Class Members for whom Chime can ascertain an e-mail address from its records with

reasonable effort. For any E-mail Notices that are returned undeliverable, the Settlement Administrator shall use reasonable efforts to identify updated e-mail addresses and resend the E-mail Notice to the extent updated e-mail addresses are identified. The Settlement Administrator need make only one attempt to resend any E-mail Notices that are returned as undeliverable. *Id.*

The Notices, jointly drafted and approved by the Parties, provide Settlement Class Members with all required information so that each member may make an informed decision regarding participation in the Settlement. SA § VII.1-5. The Notices will include, among other things: information regarding the nature of the lawsuit; a description of the material terms of the Settlement; the class definition; the deadline by which Settlement Class Members must submit Request for Exclusion Forms or objections; the date upon which the Final Approval Hearing will occur; the address of the Settlement Website at which Settlement Class Members may access the Settlement Agreement; the telephone number of the Settlement Administrator if additional information is needed; and other related documents and information. SA § VII.1-5. The Notices will also advise that the Claim Form will be available online for electronic submission or download or by contacting the Settlement Administrator for a paper copy. SA § VII.1.

The Settlement Administrator will also create a website dedicated to this Settlement, which will be public by the Notice Deadline, for the purposes of disseminating information and details on the Settlement, filing a Claim, opting out of the Settlement, objecting to the Settlement, deadlines related to the Settlement, pleadings, and other information relevant to the Settlement Class. SA §§ II.26, VII.6. The website will make available to Settlement Class Members both the Short-Form Notice and Long Form Notice, Claim Form, and opt-out form approved by the Court.  Settlement Class Members will also be able to file Tier 1 and Tier 2 claims electronically on the website. SA § II.26. Settlement Class Members will also be able to download and print a Claim Form from the website. *Id*. Further, the Settlement Administrator will maintain a toll-free number where Settlement Class Members can obtain additional information and request mailed claim forms.  SA § VI.2.e.

### 4.    Opt-Out and Objection Procedures

Settlement Class Members may exclude themselves from the Settlement by completing and mailing the proposed opt-out form to the Settlement Administrator, postmarked no later than 50 days

after the Notice Deadline. SA §§ II.18, VII.3. Settlement Class Members may also object to the Settlement, and Class Counsel's request for attorneys' fees, costs, and expenses, and Service Awards. To object, a Settlement Class Member must not opt-out of the Settlement, and must submit the written objection electronically or by mail to the Court as identified in the notice, postmarked no later than 50 days after the Notice Deadline. SA §§ II.17, VII.4. The objection must set forth, among other things, (a) the case name; (b) the objector's name, address, last four digits of the Chime account number, and telephone number; (c) explanation of membership in Settlement Class; (d) grounds for objection; and (e) identity of representing counsel, if any. SA § VII.4.

### 5.    Notice and Administrative Costs

Defendants will pay the costs associated with providing notice to the Settlement Class and costs associated with administering the Settlement, including the costs of the Settlement Administrator, which is capped at $250,000.00. SA §§ VI.3, VII.8. These costs will be paid separately by Defendants and will not reduce the relief provided for the Settlement Class. *Id.*

### 6.    Attorneys' Fees, Costs, and Service Awards

After reaching agreement on benefits to Settlement Class Members, the Parties separately negotiated Class Counsel's claims for attorneys' fees, costs, and reimbursement of litigation expenses, as well as the Settlement Class Representatives' Service Awards. SA § I.H. Class Counsel will apply to the Court for an award of no more than $750,000 in attorneys' fees, costs, and expenses.  Defendants have agreed to pay any attorneys' fees, costs, and expenses awarded by the Court, not to exceed $750,000, separately from the relief obtained for the Settlement Class. SA § X.2. Class Counsel will also apply for Service Awards of no more than $500 for each of the Named Plaintiffs in recognition of the commitment and effort they have contributed for the benefit of the Settlement Class. SA § X.1. Defendants have also agreed to pay any service awards approved by the Court, not to exceed $500 per Named Plaintiff, separate from the relief for the Settlement Class. SA § X.1. In sum, any award of attorneys' fees, costs, and expenses, and Service Awards, will not reduce the benefits secured for the Class. SA § X.1–2. By no later than 21 days before the deadline to object, Class Counsel will submit to the Court a detailed memorandum seeking attorneys' fees, costs, and expenses pursuant to the Settlement Agreement. SA §§ VIII.1, X.2.

7.      **Release**

In exchange for the benefits provided under the Settlement, Class Members will release Defendants and related entities from all claims related to the alleged claims or events in the Action or the Service Disruption. SA §§ II.20, IX.  The Released Claims do not include any claims arising from or relating to any conduct by Defendants after the date the Settlement is executed.  SA § IX.2.

## IV.   ARGUMENT

### A.   The Court Should Certify the Settlement Class

#### 1.   The Settlement Class Meets the Requirements of Rule 23(a)

In granting preliminary approval, the Court should confirm that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. The prerequisites for certification under Rule 23(a) are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, each of which is satisfied here. Fed. R. Civ. P. 23(a); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The proposed Settlement Class encompasses thousands of Settlement Class Members and thus readily satisfies the numerosity requirement.  *See Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) (finding forty members presumptively satisfies numerosity).

The proposed Settlement Class also satisfies the commonality requirement of Rule 23(a), which requires that class members' situations "share a common issue of law or fact, and [be] sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) Each of the Settlement Class Members were accountholders during the Service Disruption, and their legal claims involve the same Service Disruption. The common issues that their claims share include: (i) whether Defendants breached their contracts with Plaintiffs and the Settlement Class, (ii) whether Defendants owed duties to Plaintiffs and the Settlement Class Members and whether those duties were breached, (iii) whether Defendants' conduct was unfair or unlawful; and (iv) whether Plaintiffs and the Settlement Class Members suffered damages as a result of the Service Disruption. *See* (ECF No. 1 ¶ 60).

The final requirements of Rule 23(a)—typicality and adequacy—are satisfied by the proposed Class Representatives.  Like the other members of the Class, Named Plaintiffs each were

accountholders during the Service Disruption, and suffered the same or similar alleged injury—namely, they were denied access to their funds. *See Wolin*, 617 F.3d at 1175 ("Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect."). In addition, Named Plaintiffs are adequate class representatives with no conflicts of interest and are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020; JAY Dec. ¶¶ 12, 14.

### 2.    The Settlement Class Meets the Requirements of Rule 23(b)(3).

"In addition to meeting the conditions imposed by Rule 23(a), the Parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.* Settlement Class Members' claims depend primarily on whether Defendants are liable for the Service Disruption, and thus raise the predominantly common questions justifying class treatment.[7]

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Finally, class proceedings here do not present the sort of management problems that sometimes override the benefits of class actions, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

### 3.    The Court Should Appoint Class Counsel.

Plaintiffs request that the Court appoint John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Lead Class Counsel, and Patrick A. Barthle II of Morgan & Morgan Complex Litigation Group and Joshua H. Watson of Clayeo C. Arnold, APC as Class Counsel. In evaluating

---

[7] *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 322 (C.D. Cal. 2016) ("*Spann I*) (finding predominance met when conduct at issue is focused primarily on defendant's actions and not on individual plaintiffs); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650-51 (C.D. Cal. 1996) (observing "defendant's argument ignores the fact that plaintiffs' claims actually focus on defendant's liability and defendant's conduct with regard to the leads . . . Thus, because defendant's conduct with regard to the leads—and, hence, with regard to the plaintiffs themselves—involves questions of common fact primarily, the Court finds that this factor alone does not destroy the predominance of common questions.").

the appointment of class counsel, courts must consider (i) counsel's work in identifying or

investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's

knowledge of the applicable law; and (iv) the resources counsel will commit to representing the

class. Fed. R. Civ. P. 23(g)(1)(A).

With respect to the adequacy of Class Counsel, they have invested considerable time and

resources into the investigation of the facts underlying the claims, including the interviews of

numerous class members who contacted Class Counsel, and the prosecution of this action. Since the

outset of this litigation, the firms have cooperatively and effectively collaborated to prosecute, and

ultimately resolve, this case on behalf of their clients and the Class. They have performed work

critical to achieving benefits for the Class, including by investigating the facts surrounding the

Service Disruption, researching and analyzing legal claims under state and federal law and common

law, preparing and filing the Complaint, participating in meetings with defense counsel to discuss

the Parties' respective positions, negotiating the proposed Settlement, and drafting this motion for

preliminary approval. JAY Dec. ¶¶ 11–12. The proposed Class Counsel firms have significant

experience in similar class actions, and proposed Lead Counsel Mr. Yanchunis served as co-Lead

Counsel in two very similar cases involving service disruptions of the type experienced here. *See*

*Fuentes v. UniRush, LLC* No. 1:15-cv-08372, ECF No. 49 (S.D.N.Y. Sept. 12, 2016) (Final

Approval Order) ("*RushCard*") *Lewis v. Green Dot Corporation*, Case No. 2:16-cv-03557, ECF No.

109 (Final Approval Order) (C.D. Cal. Nov. 22, 2017) ("*Green Dot*"). The firms have the experience

to ensure the implementation of the Settlement and the resources to continue their representation of

the Settlement Class. The respective resumes for each of the attorneys seeking appointment as Class

Counsel are attached as Composite Exhibit 1 to Mr. Yanchunis's Declaration.

### B.    The Settlement Merits Preliminary Approval

Rule 23(e) requires judicial approval of the compromise of claims brought on a class basis.

Recent revisions to Rule 23(e) standardized the analysis needed at the preliminary approval stage.

First, amended Rule 23(e)(1) provides that notice should be given to the class, and hence,

preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve

the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes.  Fed.

R. Civ. P. 23 (e)(1)(B)(i)–(ii).  As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance.  Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

The Court will "likely be able to" finally approve this Settlement. As an initial matter, Settlement Class Representatives and Settlement Class Counsel have adequately represented the Class. *See infra*, section  IV.A.3. Counsel are greatly experienced in litigating and resolving consumer class actions, and have developed a strong understanding of the strengths and weaknesses present in such cases and what type of settlement might be fair, reasonable, and adequate under the circumstances. JAY Dec. ¶ 12. This experience includes achieving final approval of two class action settlements involving similar service disruptions experienced by cardholders in *RushCard* and *Green Dot*. JAY Dec. ¶ 13. The "involvement of experienced class action counsel" supports the presumption that a settlement is fair. *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, *et al.*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) (citations omitted); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014).

Moreover, the Settlement was reached as a result of extensive, arm's length negotiations between experienced counsel; including review by counsel of information and data voluntarily produced by the respective parties, and utilization of an experienced neutral in Judge Beeler, who further enhanced negotiations. JAY Dec. ¶¶ 18–20.

**1.     Adequacy of Relief: Costs, Risks, and Delay**

The relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay trial and associated appeals would wreak. At bottom, Plaintiffs faced difficult hurdles in successfully maintaining this action in this Court, or in certifying a class. JAY Dec. ¶ 29.

If the Parties had been unable to resolve this case through settlement, the litigation would likely have been protracted and costly. Although Named Plaintiffs and Class Counsel believe that the claims asserted are meritorious, continued litigation against Defendants posed significant risks that made any recovery uncertain. At the outset, continued litigation of this matter would require the Court to resolve several separate threshold questions concerning the viability of the litigation. First, the Court would have to decide the question of the arbitrability of Plaintiffs' claims. Defendants have maintained that this provision should be enforced and that all claims should be submitted to individual arbitration proceedings. A victory by Defendants would have likely ended any relief being made available to any one class member as it is highly improbable that any class member would have pursued their claims in arbitration based on the amount of any one class member's claim and the costs of the arbitration. Next, pursuant to the express terms of the agreement between Chime and Settlement Class Members, any claims arising from outages, such as the Service Disruption, are barred. If the Named Plaintiffs had been able to overcome these difficult hurdles, the Court would have to turn to the question of class certification and Defendants' contention that individualized factual inquiries and damages and legal variation among the laws of the states would preclude class certification. JAY Dec. ¶ 30–32. "Even if plaintiff[s] were to prevail at trial, there is a real risk that plaintiff[s] could recover nothing."  *Spann I*, 314 F.R.D. at 327.[8]

---

[8] For example, Defendants would likely contend that temporary loss of access to funds, without more, is not compensable harm. *See, e.g., In re Sony Gaming Network & Customer Data Breach and Security Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012) (rejecting negligence claim because nothing in the agreement suggested a duty to provide uninterrupted service); *Turner v Talbert*, 2011 WL 4479766, *2 (M.D. La. 2011) (temporary account freeze was not compensable injury); *Kuhns v. Scottrade*, 868 F.3d 711, 718 (8th Cir. 2017) ("Massive class action litigation should be based on more than allegations of worry and inconvenience") (holding no contract damages absent allegation of misuse or information); *Jones v. Commerce Bank, N.A.*, 2006 WL 2642153, *2 (S.D.N.Y 2006) ("Plaintiff has submitted no evidence that she suffered any compensable injury stemming from the loss of access to these funds between May 22, 2005 and June 9, 2005"); *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, *8 (S.D.N.Y. 2019) ("Rudolph does not identify any such injury that arose from the brief freeze placed on her own account. Absent an allegation of how an account freeze resulted in a loss to Rudolph, the claim that she was injured by the temporary inability to access her account does not demonstrate injury."); *Miller v. Bank of Am. N.T. & S.A.*, 2014 WL 5091897, *11 (Cal. Super. 2014) ("temporary inability to access an account, without more, does not constitute 'actual damages,'" under California

In light of these difficult issues, the Settlement's monetary benefits are appropriate and the timing in which they will be provided is significant, going well beyond the potential litigated recovery. Class members already received benefits without taking any action; Defendants made the Courtesy Payment and Transaction Credit benefits available automatically and immediately, in the sum of $5,960,563. Further, under the Settlement, Settlement Class Members can receive compensation for losses without the burden of providing any documentation to support their damages. Settlement Class Members with more significant losses may file supporting documentation to seek greater relief. Combined, and subject to the terms of the Agreement, Tiers 1 and 2 provide up to $5.5 million in additional relief available to Settlement Class Members submitting valid claims. Considering the significant threshold challenges, this is an exceptional result. JAY Dec. ¶¶ 33–35.

Although formal discovery did not occur, the Parties exchanged significant information which provided Class Counsel—along with Lead Counsel's prior experience in similar litigation and his communications with many consumers here and in these type cases—with the ability to make a well-informed decision about the risks and the benefits of the Settlement. JAY Dec. ¶ 46.

In addition, the Settlement terms are favorable to the Class and meet the demands in the Complaint. All Class Members received monetary benefits under the Courtesy Payment and Transaction Credit provisions of the Settlement and Class Members with losses may elect to file a claim under Tier 1 or Tier 2 for additional monetary relief. SA § IV.2–3. These terms strongly suggest that Class benefits were not traded for individual benefits. *See Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *10 (N.D. Cal. Sept. 29, 2016).

The Settlement provides immediate and significant benefits for Settlement Class Members they otherwise may not receive, providing virtually everything Plaintiffs sought in the Complaint.

In evaluating the Settlement, it is of course relevant to consider the amount that Settlement Class Members will recover individually. Settlement Class Members with an active Chime account previously received a credit to their account in the amount of $10.00 and those who incurred certain transaction fees during the Service Disruption received a credit to cover those fees. If approved by

---

Consumer Legal Remedies Act, and "Plaintiff provides no way to calculate compensation under this theory—and it is compensation, as such, which is the essence of damages available under the CLRA.").

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864

the Court, Settlement Class Members may file a claim for reimbursement of financial or other losses suffered as a result of the Service Disruption. Subject to offsets for amounts previously provided, Settlement Class Members who do not wish to submit supporting documentation, but attest to having losses, will be eligible for a payment of up to $25.00. Subject to the same offset, Settlement Class Members with more significant losses and who provide Reasonable Documentation of such losses will be eligible for a payment of up to $750.00. JAY Dec. ¶ 33.

The forms of "discernible benefits" provided under the Settlement to Class Members "achieve the primary objective of the lawsuit" and weigh in favor of approving the Settlement. *See Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *4 (N.D. Cal. Sept. 10, 2012); *see also Stern v. Superior Court*, 129 Cal. Rptr. 2d 275, 282 (Cal. Ct. App. 2003).

The proposed Settlement is also well within the range of settlements approved in quite similar consumer class actions. In *Rushcard*, the court granted final approval of a settlement that is substantially similar to the proposed Settlement here. The *Rushcard* matter involved similar claims arising from a service disruption of RushCard prepaid debit card services during a processing conversion to MasterCard, although in that case the service disruption lasted approximately two weeks. In granting final approval, the *RushCard* court found that the "[s]ettlement reflects an outstanding result for the Class in a case with a high level of risk." *Rushcard*, ECF No. 49.

*Green Dot* likewise involved very similar claims arising from a service disruption of Green Dot prepaid debit card services during a processing conversion to MasterCard, but again the service disruption extended for still a greater period than the period of the Service Disruption in this case.  In granting final approval of the two consolidated class actions, the court affirmed its prior holding on preliminary approval that the "settlement benefits were fair, adequate, reasonable and compelling in light of the litigation risks in th[e] case." *Green Dot*, ECF Nos. 109 at 13, and 102 at 20-22.

Here, the Settlement more likely than not provides 100 percent of a loss sustained by an individual consumer. Based on Class Counsel's experience in those prior cases, the $750 individual cap, and the $5.5 million aggregate cap, considering the relief already provided to all Settlement Class Members, should be sufficient to recompense the legitimate individual claims. JAY Dec. ¶ 41.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864

While there are striking similarities between *RushCard*, *Green Dot*, and the present matter, there are also differences that highlight the more favorable benefits that Settlement Class Members are receiving under the presently proposed Settlement. The Chime Service Disruption was the result of intermittent technical issues that led to some Chime account holders losing account access for different (and intermittent) lengths of time. This is much more limited—and inherently individualized—than what occurred in *RushCard* or *Green Dot*. JAY Dec. ¶ 42. Further, the Service Disruption in this case was briefer than in *RushCard* (two weeks) and in *Green Dot*.  *Id.*

Similar to the proposed Settlement, the *RushCard* settlement provided class members with tiered reimbursements for losses related to the service disruption. Class members who submitted reasonable documentation were eligible to receive payment of up to $500, and class members who did not submit documentation were eligible to receive payment of up to $100. The proposed Settlement here increases the maximum for documented losses to $750 per Class Member. In *Green Dot*, class members who submitted reasonable documentation were, like here, eligible to receive payment of up to $750, and those who did not were eligible to receive payment of up to $100.

In *RushCard*, the Parties negotiated a $6,500,000 maximum settlement contribution to resolve claims for 425,383 class members. Here, the Parties negotiated a $5,500,000 maximum settlement contribution for approximately 528,000 Settlement Class Members. Additionally, the proposed Settlement provides a minimum settlement contribution of $1,500,000 for Tier 1 and 2 claims combined, a term not present in *RushCard*. This minimum is *in addition to* the $5,960,563 already paid under the Courtesy Payment and Transaction Credit provision of the Agreement.

In evaluating the adequacy of the minimum and maximum contributions, the Parties had the benefit of the claims information from *RushCard*. For the equivalent of Tier 1 and 2 benefits in that settlement, 35,334 claims were paid for a total of $3,439,868.64. JAY Dec ¶ 40. Based on that claims rate (approximately 8.3%), the sum available in Tier 1 and 2 should be sufficient.[9] *Id.*

The proposed total Settlement value here of $12,462,563[10] is substantial by any measure and certainly falls within a range of approval.  This is particularly true given the real risk that Plaintiffs

---

[9] In *Green Dot*, the class comprised 57,808 cardholders.  With respect to the equivalent of Tiers 1 and 2 here, 2,050 completed claims were received and paid, comprising a claims rate of 3.5%. JAY Dec. ¶ 40.
[10] Consisting of: $5,960,563 Courtesy Payment; up to $5.5 million available in Tiers 1 and 2; $250,000 for Notice and Administration; the $500 per Named Plaintiff for service awards; and $750,000 for attorneys' fees, costs, and expenses.

could have recovered nothing if litigation had continued due to the arbitration provision and the proof of damages that could be recovered in this case not being certain.  JAY Dec. ¶ 24.

### 2.   Adequacy of Relief:  Proposed Method of Distributing Relief

Relief will be distributed to the Class via the use of Claim Forms on which Class Members will submit a brief explanation as to how the Service Disruption caused them a loss and the amount of loss claimed as a result of the Service Disruption. SA § IV.6.b. To the extent Settlement Class Members seek to recover under Tier 2, they must also provide Reasonable Documentation, SA § IV.6.c, consisting of any documentation tending to establish Substantiated Losses fairly traceable to the Service Disruption, including receipts, account statements, letters or records from employers confirming payments or losses, and letters from landlords confirming payments or losses, SA § II.19. The claims period is open for 75 days after the Notice Deadline. SA § II.4.

### 3.   Adequacy of Relief:  Attorneys' Fees

Plaintiffs will seek no more than $750,000 in attorneys' fees, costs, and expenses. Defendants have agreed to pay any attorneys' fees, costs, and expenses awarded by the Court, not to exceed $750,000, separately from the relief obtained for the Settlement Class. In sum, any award of attorneys' fees, costs, and expenses will not reduce the benefits secured for the Class. JAY Dec. ¶ 22. The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount on their Fee Request and will not alter the Effective Date. Defendants' obligation to pay such fees will occur no earlier than the Effective Date. SA § X.2.

### 4.   Rule 23(e)(3) Agreements and Equality of Treatment.

Finally, the Court should examine whether the Settlement provides preferential treatment to any class member. This analysis turns, among other things, on whether there is any disparity among what Class Members are poised to receive and, if so, whether the Settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015); *G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *14 (N.D. Cal. July 30, 2015) (analyzing whether settlement "appears uniform").

Here, Plaintiffs seek certification of a single class and all members of the proposed Settlement Class are entitled to the same benefits. All Settlement Class Members who do not exclude themselves will be eligible to submit claims for payment under Tier 1 or 2. The amounts of these reimbursements may vary, but those differences reflect the differing amounts of losses Settlement Class Members incurred because of the Service Disruption. Thus, each Settlement Class Member who submits a valid claim will be paid proportionate to the harm they suffered. JAY Dec. ¶ 44.

The Settlement Agreement authorizes a Service Award for each Named Plaintiff, in an amount to be determined by the Court but not to exceed $500, in recognition for the services they performed on behalf of the entire class that resulted in the Settlement. If approved by the Court, these Service Awards will be paid by Defendants separately from the relief obtained for the Settlement Class. Thus, the Service Awards will have no bearing on Class Relief. SA § X.1.

In evaluating whether the Settlement grants preferential treatment to Plaintiffs, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). More importantly, however, are "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

The Service Awards requested will not be "unreasonably large and thus unfair." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015). Rather, the awards contemplated here are much lower than "typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see also Online DVD-Rental*, 779 F.3d at 947-48 (affirming awards of $5,000 to each of nine class representatives). The amount requested is appropriate given the time, effort, and risk of each Named Plaintiff's participation in this Action. JAY Dec. ¶ 45. Critically, the Settlement is not conditioned on the Court's approval of the Service Awards. SA § X.1; *Spann I*, 314 F.R.D. at 328-29 ("[B]ecause . . . the Settlement Agreement shall remain in force regardless of any service awards, the awards here are unlikely to create a conflict of interest between the named

plaintiffs and absent class members."). Accordingly, the Named Plaintiffs' interests did not conflict with the interests of the Settlement Class. *Radcliffe*, 715 F.3d at 1161; JAY Dec. ¶ 45.[11]

### C.     The District's Procedural Guidance

The Northern District of California's Procedural Guidance for Class Action Settlements (hereinafter "District Guidance") sets forth multiple applicable criteria, addressed below.

### 1.     Sub-Factors 1(a) & 1(c): Classes and Claims Alleged v. Settled

The proposed Settlement Class is functionally equivalent to that alleged in the Complaint. The Complaint sought a class consisting of: "All Chime consumers in the United States who were denied access to their accounts and funds beginning October 16, 2019." (ECF No. 1 at ¶ 57). The Settlement Class is defined as: "All consumers who attempted to and were unable to access or utilize the functions of their accounts with Chime, as confirmed by a failed transaction or a locked card as recorded in Chime's business records, beginning on October 16, 2019 through October 19, 2019, as a result of the Service Disruption." SA § III.1. Thus, there is harmony between both the proposed class and the claims to be released in the Complaint and Settlement. JAY Dec. ¶ 34.

### 2.     Sub-Factor 1(e): Anticipated Recovery v. Settlement Amount

Given the potentially dispositive—from a class perspective—threshold issues here of arbitration and individualized damages, it is quite possible the anticipated litigated outcome for the class would have been nothing. However, assuming those hurdles were able to be overcome, and a class was certified, each of Plaintiffs' substantive claims were dependent on showing actual damages from the Service Disruption—for example, negligence damages (Count I) or actual damages under the Florida Deceptive and Unfair Trade Practices Act (Count VI) or gain to Defendants via unjust enrichment (Count II). Damages to class members are inherently difficult to model, as each is dependent on the specific individual's need for access to funds from October 16-19, 2019, and the consequences resulting from not being able to so access. One potentially certifiable damages model would be the amount of interest that could have been derived by class members from their funds during the days of the Service Disruption, but that sum would have been *de minimis* based on current interest rates as to the class overall, as well as to any one Settlement Class Member. JAY Dec. ¶ 35.

---

[11] No Rule 23(e)(3) agreements are in place in this matter. JAY Dec. ¶ 52.

Accordingly, the total value of the Settlement far exceeds any potential class recovery if Plaintiffs had been able to certify a damage model and also had prevailed on their claims at trial.

### 3.      Sub-Factor 1(g): Expected Claims Rates

Plaintiffs expect a similar claims rate here to that seen in *RushCard* and *Green Dot*.  In *RushCard*, the claims rate for the equivalent to the Tiers 1 and 2 was 8.3%; in *Green Dot*, the equivalent claims rate was 3.5%.  JAY Dec. ¶ 40.

### 4.      Factor 2: Administrator Selection

Because Defendants are paying for all costs of notice and settlement administration, separate and apart from the relief being provided to the Settlement Class, they were principally responsible for the selection of Epiq as the presumptive Settlement Administrator. Because Epiq also administered the *Green Dot* settlement, it is familiar with the processes and procedures needed here, and is able to effectively and efficiently provide the notice and administration services needed in accord with Rule 23 and Due Process. JAY Dec. ¶ 48. Moreover, the proposed administrator was selected following the transmission of Requests For Proposals to various other administrators, with Epiq selected not merely on the basis of its bid, but also its experience in handling notice and administration in *Green Dot*. *Id.*; Declaration of Cameron Azari ¶ 14, ("Azari Dec."), S.A. Exhibit 6.

Proposed Lead Class Counsel John Yanchunis's history of engagements with Epiq over the last two years as a notice and claims administrator consists of the following class action settlements: *Parsons v. Kimpton Hotel & Restaurant Group, LLC*, 3:16-cv-05387 (N.D. Cal.); *Fulton-Green v. Accolade, Inc.*, 2:18-cv-00274 (E.D. Pa.); *Nelson v. Roadrunner Transportation Systems, Inc.*, 1:18-cv-07400 (N.D. Ill.); and *Green Dot*. JAY Dec. ¶ 49.

### 5.      Factors 3-5: Notice Program, Opt-Outs, and Objections

The Notice Program is thorough, far-reaching, and effective. The Notices clearly advise Class Members of their ability to opt-out and provides 50 days from the Notice Date for opt-outs to be submitted. SA § II.18.  In accord with the District's Guidance, the procedure for opting out requires only that Class Members provide the Settlement Administrator with their name and address; a statement that he or she wants to be excluded from the Action; and their signature. SA VII.3.

Likewise, the procedure for Objecting is set forth clearly in the Notices. SA VII.4. Objections must be submitted in writing to the to the Court no later than 50 days after the Notice Date, and must include the objector's name, address, last four digits of the Chime account number, and telephone number; an explanation of the objector's belief that they are a Settlement Class Member; a statement of the grounds for the objection; identification of all counsel who represent the objector and whether any will appear at the Final Approval Hearing, a statement identifying the number of class action settlements objected to by the objector or their counsel in the last five years, an indication whether the objector intends to appear at the Final Fairness Hearing, and a personal signature. SA VII.4.

**6.    Factors 6 & 7: Attorneys' Fees, Costs, and Expenses; Service Awards; Cy Pres; Timeline; and CAFA**

As noted above in section IV.B.3, Class Counsel will seek no more than 750,000 in attorneys' fees, costs, and expenses; and Defendants have agreed to pay such amounts separately from the relief obtained for the Settlement Class. SA § X.2. Given the more than $12 million made available via the Settlement, this fee request is only 6% of that amount.  JAY Dec. ¶ 23. As explained in section IV.B.4, Plaintiffs will seek Service Awards of no more than $500 for each Named Plaintiff, and Defendants will pay any such awards separate from the class relief. SA § X.1.

To the extent claims under Tiers 1 and 2 do not meet the $1,500,000 minimum payment, the difference will be subject to a *cy pres* distribution to the East Bay Community Law Center, as directed and agreed to by the Court. SA § IV.5. The East Bay Community Law Center is a non-profit organization in Berkeley, California, providing legal services and policy advocacy responsive to the needs of low-income communities and affords legal training to future attorneys committed to addressing the causes and conditions of racial and economic injustice and poverty. JAY Dec. ¶ 50.

Class Members will have far more than the District Guidance's recommended thirty-five days to object or opt-out of the Settlement, having instead 50 days after the Notice Date (which is 30 days after Preliminary Approval is granted) to object or opt-out. By no later than 21 days prior to the Objection Deadline, Plaintiffs will file their motion for final approval of the Settlement and their motion for attorneys' fees, costs, and expenses and for Service Awards. SA § VIII.1.

CAFA Notice is required and will be given. SA § V.2.  Compliance with the coupon settlement provisions of CAFA, or other settlement related dictates, are inapplicable here.

### 7.    Factor 11: Past Distributions

As noted above Lead Settlement Class Counsel has been involved in two similar service disruption settlements, *RushCard* and *Green Dot*. In *Green Dot*, the settlement benefits made available to the class for Tier 2 and Tier 3 claims (which were the equivalent of Tiers 1 and 2 in this matter) was $1.5–3.5 million. *Green Dot*, ECF No. 105 at 10–11; JAY Dec. ¶ 51. Of importance here, with respect to the equivalents for the Tier 1 and 2 benefits here, 2,050 completed claims were received and paid, comprising a claims rate of 3.5% . JAY Dec. ¶ 51. Notice, as proposed here, was provided by Epiq. *Id*. The notice program in *Green Dot* consisted of direct mail notice to class members, and establishment of a settlement website and a dedicated toll-free number. *See Green Dot*, ECF No. 109 at 8. The class notice and administration costs were paid separately by the defendant.  JAY Dec ¶ 51.  In accord with the settlement, Class counsel sought, and received, a fee and cost award of $750,000. *Green Dot,* ECF No. 109 at 20.

In *RushCard*, there were 35,334 claims in Tiers II and III (the equivalents to Tiers 1 and 2 here), for a total distribution of $3,439,868.64; a claims rate of 8.3%. The notice program consisted of direct email and mail notice to class members, and establishment of a settlement website and a dedicated toll-free number. No *cy pres* distribution was sought or granted. The cost of class notice and administration were paid separately by the defendant.  In accord with the settlement, class counsel sought and received a cost and fee award of $1.5 million.  JAY Dec. ¶ 51.

**D.    The Court Should Order Dissemination of Class Notice as Proposed**

#### 1.    The Notice Program Provides the Best Method of Notice Practicable.

The federal rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Notice will be directly provided by e-mail Notice to the e-mail address on file in Chime's business records and will be posted on the Settlement Website. SA §§ II.16, VII.2. Appropriate steps will also be taken to re-send notices that are returned undeliverable and to identify updated e-mail

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864

addresses and resend the E-mail Notice to the extent updated e-mail addresses are identified. *Id.* This proposed Notice Plan is designed to reach as many of the Settlement Class Members as possible, and fully comports with due process under the circumstances of this case. Even prior to the amendment to Rule 23(c)(2)(B) expressly permitting electronic notice, email notice in similar circumstances has been found appropriate. *See, e.g.*, *Spann I*, 314 F.R.D. at 331; *In re Sony PS3 Litig.*, No. 10-CV-01911-YGR, 2017 WL 5598726, at *16 (N.D. Cal. Nov. 21, 2017); The proposed notice plan thus provides the best method of notice practicable for the Class. JAY Dec. ¶ 43; Azari Dec. ¶¶ 16, 29.

### 2. The Proposed Notices Adequately Inform Settlement Class Members

Notices provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e) requires that a notice describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re DVD-Rental*, 779 F.3d at 946.

The Notices proposed by the Parties—the E-Mail Notice, Short Form Notice, and Long Form Notice—comply with those requirements. Each provides straightforward information about the nature of the action, the terms of the Settlement, the class definition, the underlying litigation, Defendants' defenses, that Settlement Class Members may appear through counsel, the process for requesting exclusion from the Settlement, and the binding effect of the Settlement on Settlement Class Members if they do not request exclusion from the Court. *See* SA, Ex's 2–4. The Notices also direct Settlement Class Members to the Settlement Website for more information. The Notices provide "the best practicable notice" to the Settlement Class here. *See, e.g., Spann I*, 314 F.R.D. at 331-32 (approving notices containing substantially similar content); Azari Dec. ¶¶ 16, 29.

### 3. Notice of the Settlement Will Be Provided to Appropriate Officials.

Notice of the Settlement will also be provided to the appropriate federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, so they may make an independent evaluation of the Settlement and bring any concerns to the Court's attention. SA § V.2.

### E.     The Court Should Set a Schedule for Final Approval

The next steps in the settlement approval process are to schedule a final approval hearing, notify the class of the Settlement and hearing, allow Settlement Class Members an opportunity to file any objections or comments regarding the Settlement, and allow Plaintiffs to conduct appropriate objector discovery if necessary.[12] Toward these ends, the Parties have provided the Court with a proposed order that provides for the following schedule:

| | |
|---|---|
| Notice Deadline: | 30 days after entry of a Preliminary Approval order |
| Deadline to object to the settlement, or opt-out of the settlement: | 50 days after Notice Deadline |
| Deadline to submit a claim: | 75 days after Notice Deadline |
| Plaintiffs to file a fee and service awards application: | 21 days prior to Objection Deadline |
| Plaintiffs to file papers in support of final approval of the settlement: | 21 days prior to Objection Deadline |
| Final Approval hearing: | 90 days, or shortly thereafter, after CAFA notices mailed |

## III.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter an Order substantially in the form of the Preliminary Approval Order attached to the Settlement Agreement as its Exhibit 5, (1) preliminarily approving the Settlement Agreement; (2) certifying, for settlement purposes, the proposed Settlement Class under Rule 23(a), (b)(3), and (e); (3) approving and ordering dissemination of the proposed class notice and forms of the Notice Program set forth in the Settlement Agreement; (4) appointing Plaintiffs as Settlement Class Representatives; (5) appointing as Lead Counsel John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and as Class Counsel Patrick A Barthle II of Morgan & Morgan Complex Litigation Group and Joshua H. Watson of Clayeo C. Arnold, APC, all to serve as counsel for the Settlement Class under Rule 23(g); (6) appointing Epiq Class Action and Claims Solutions, Inc. as the Settlement Administrator; and (7) scheduling a Final Approval Hearing at a date convenient for the Court.

---

[12] *See, e.g.*, Final Order and Judgment, *Milano v. Interstate Battery Sys. of Am., Inc.*, No. 4:10-DV-02125 (N.D. Cal. July 5, 2012) (noting that objector repudiated his objection in deposition testimony); *In Re: MagSafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *2 (N.D. Cal. May 29, 2012) (objector depositions authorized to inquire into objectors' membership in the class and ability to post an appellate bond).

1

DATED: August 7, 2020                                    Respectfully submitted,

2

3                                                        **MORGAN & MORGAN**
                                                         **COMPLEX LITIGATION GROUP**

4
                                                         */s/ John A. Yanchunis*
5                                                        John A. Yanchunis (*pro hac vice*)
                                                         Patrick A. Barthle II (*pro hac vice*)
6                                                        201 North Franklin Street 7th Floor
                                                         Tampa, Florida  33602
7                                                        (813) 223-5505
                                                         (813) 223-5402 (fax)
8

9                                                        Joshua H. Watson
                                                         CLAYEO C. ARNOLD, APC
10                                                       Cal. Bar No. 238058
                                                         865 Howe Ave
11                                                       Sacramento, CA 95825
                                                         (916) 777-7777 (tel)
12                                                       (916) 924-1829 (fax)
                                                         jwatson@justice4you.com
13

14                                                       ***Attorneys for Plaintiffs and the***
                                                         ***Proposed Settlement Class***
15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 4:19-cv-06864