# Exhibit A

## STIPULATION OF AGREEMENT AND SETTLEMENT AND RELEASE

This Stipulation of Agreement and Settlement and Release is entered into by and among the Named Plaintiffs (as defined below), for themselves and on behalf of the Settlement Class, and Defendants Chime Financial, Inc. ("Chime"), The Bancorp Inc. ("Bancorp"), and Galileo Financial Technologies, LLC (formerly known as Galileo Financial Technologies, Inc. and referred to herein as  "Galileo") (collectively, "Defendants"), subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure.   As provided herein, Defendants and the Named Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class against the Defendants in connection with the Service Disruption (defined below) as alleged in the action titled *Richards, et al. v. Chime Financial, Inc.*, Case No. 4:19-cv-06864 (N.D. Cal.) shall be settled and compromised upon the terms and conditions contained herein.  The Named Plaintiffs and Defendants are collectively referred to herein as the "Parties."

## I.    RECITALS

A.    Chime is the program manager for deposit accounts administered by Bancorp, for which Galileo acts as a processor (the "Accounts").

B.    Some accountholders experienced an intermittent disruption in service for portions of the period of time between October 16, 2019 and October 19, 2019 (the "**Service Disruption**").

C.    On October 22, 2019, Plaintiffs Ryan Richards, Ruba Ayoub, Brandy Terbay and Tracy Cummings (the "**Named Plaintiffs**") filed this putative class action in this Court, captioned *Richards, et al. v. Chime Financial, Inc.*, Case No. 4:19-cv-06864 (N.D. Cal.) (the "**Action**").  Plaintiffs asserted claims against Defendants for negligence, unjust enrichment, breach of contract, conversion, breach of fiduciary duty, violation of the Florida Deceptive and Unfair Trade Practices Act, violation of the Illinois Consumer Fraud Act, and violation of the Illinois Uniform Deceptive Trade Practices Act.

D.    On February 6, 2020, counsel for the Parties attended an initial settlement conference in front of Judge Beeler in San Francisco, California to discuss the facts and the law underlying the Action.  Counsel for the Parties engaged in discussions regarding the factual circumstances as well as potential strengths and weaknesses of the allegations in support of, and defenses to, the Action.  A substantial exchange of factual information occurred, including requests for follow up information.  Following that meeting, counsel for Plaintiffs made an initial settlement demand on Defendants.

E.    During the weeks that followed, counsel for the Parties continued discussions via multiple telephone conferences.  Counsel for the Parties continued to exchange proposals and discuss resolution, as disclosed to the Court in their Stipulation and Proposed Order to extend the case stay on March 19, 2020.

F.      On May 7, 2020, after weeks of negotiations, Counsel for the Parties attended an additional settlement videoconference in front of Judge Beeler to discuss preliminary settlement terms and structure.

G.      On May 12, 2020, with the assistance of Judge Beeler, the Parties reached an agreement in principle with regard to the material terms of the proposed settlement, as memorialized in this Settlement Agreement.

H.      The Parties did not discuss attorneys' fees, costs, and expenses, or service awards for the Class Representatives, prior to reaching an agreement as to the material terms of the relief for the Settlement Class.

I.      The Parties now agree to settle this Action in its entirety, without any admission of liability, with respect to all Released Claims of the Settlement Class. The Parties intend this Agreement to bind the Named Plaintiffs, Defendants, and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Actions be settled, compromised, and dismissed on the merits and with prejudice as to Defendants, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## II.   **DEFINITIONS**

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Settlement Agreement:

1.      **"Action"** means or refers to the matter styled *Richards, et al. v. Chime Financial, Inc.*, Case No. 4:19-cv-06864 (N.D. Cal.).

2.      **"Agreement"** or **"Settlement Agreement"** means this Stipulation of Agreement and Settlement and Release, including its attached Exhibits (which are an integral part of this Stipulation of Agreement and Settlement and Release and are incorporated in their entirety herein by reference).

3.      **"Approved Claim"** means a Claim Form submitted by a Settlement Class Member that has satisfied the verification process outlined in Section IV.6, and is (a) submitted timely and in accordance with the directions on the Claim Form and the provisions of the Settlement Agreement; (b) fully and truthfully completed and executed, with all of the information requested in the Claim Form, including the Settlement Class Member's full name, Chime account number, and the Settlement Class Member's current contact information; and (c) signed by the Settlement Class Member, physically or electronically, subject to the penalties of perjury, affirming that the Settlement Class Member is a member of the Settlement Class.

2

4.      **"Claims Deadline"** means the time and date by which a Claim Form must be received by the Settlement Administrator, through any means, including U.S. Mail or through the Settlement Website established pursuant to Section VI below, in order for a Settlement Class Member to be entitled to any of the monetary consideration contemplated in this Settlement Agreement.  The Claims Deadline shall be 75 days after the Notice Deadline.

5.      **"Claim Form"** or **"Claim"** means the form Settlement Class Members must submit to be eligible for relief under the terms of the Settlement, the proposed form of which is attached hereto as Exhibit 1.

6.      **"Lead Counsel"** means:

   John A. Yanchunis
   **MORGAN & MORGAN**
   **COMPLEX LITIGATION GROUP**
   201 N Franklin Street
   Tampa, FL 33602

7.      **"Class Counsel"** means:

   Patrick A. Barthle II
   **MORGAN & MORGAN**
   **COMPLEX LITIGATION GROUP**
   201 N Franklin Street
   Tampa, FL 33602

   Joshua H. Watson
   **CLAYEO C. ARNOLD, APC**
   865 Howe Ave
   Sacramento, CA 95825

8.      **"Class Representatives"** means every one of the individuals identified as plaintiffs in the Complaint: Ryan Richards, Ruba Ayoub, Brandy Terbay and Tracy Cummings.

9.      **"Court"** means the United States District Court for the Northern District of California.

10.      **"Effective Date"** means the date ten (10) business days after which all of the following events have occurred: (a) Class Counsel and Defendants' counsel have executed this Agreement; (b) the Court has entered the Final Approval Order (as defined in Paragraph 12) without material change to the Parties' agreed-upon proposed Final Approval Order as described in Section VIII; and either (c) the time for seeking rehearing or appellate or other review of the Final Approval Order has expired, and no appeal or petition for rehearing or review has been timely filed; or (d) the Settlement is affirmed on appeal or reviewed without material change, no other appeal or petition for rehearing or

review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  The Effective Date shall not be delayed beyond the date ten business days after the Court has entered the Final Approval Order in accordance with (b) above in the event the Court declines to approve, in whole or in part, solely the payment of attorneys' fees, costs, and expenses, or of service awards, in the amounts that Class Counsel requests ("**Fee Request**"). Further, the Effective Date shall not be delayed beyond the date ten business days after an appeal is filed in the event that the sole issue on appeal is the Fee Request awarded to Class Counsel.

11.     "**Final Approval**" means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards (as defined in Section VIII). In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

12.     "**Final Approval Order**" means the order and judgment that the Court enters upon Final Approval. In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

13.     "**Named Plaintiffs**" is defined as in Section I.C.

14.     "**Notice**" means the notice of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

15.     "**Notice Deadline**" means 30 days after the Court has entered the Preliminary Approval Order and in any event no earlier than August 7, 2020.

16.     "**Notice Program**" means the notice methods provided for in this Agreement and consists of (1) e-mailed Notice to all Settlement Class Members at the e-mail address on file in Chime's business records and (2) Notice posted on the Settlement Website.  The forms of Notice shall be substantially in the forms attached as Exhibits 2–4 to this Agreement and approved by the Court, and the Notice Program shall be effected in substantially the manner provided in Section VI.

17.     "**Objection Deadline**" means 50 days after the Notice Deadline.

18.     "**Opt-Out Deadline**" means 50 days after the Notice Deadline.

19.     "**Reasonable Documentation**" means documentation tending to establish Substantiated Losses fairly traceable to the Service Disruption. Non-exhaustive examples of Reasonable Documentation include receipts, account statements, letters or records from employers confirming payments or losses, and letters from landlords confirming payments or losses.

20.    **"Released Claims"** means any and all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, penalties, remedies, matters and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, existing or potential, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, liquidated or unliquidated, legal, statutory or equitable, that have been or could have been asserted, or in the future might be asserted, in the Actions or in any court, tribunal or proceeding by or on behalf of the Named Plaintiffs, any and all of the members of the Settlement Class, and their respective present or past heirs, spouses, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these Persons, whether individual, class, direct, representative, legal, equitable or any other type or in any other capacity whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against any or all of the Released Parties, which the Named Plaintiffs or any member of the Settlement Class ever had, now has, or hereinafter may have, by reason of, resulting from, arising out of, relating to, or in connection with, the allegations, facts, events, transactions, acts, occurrences, statements, representations, omissions, or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved, set forth or otherwise related to the alleged claims or events in the Action or the Service Disruption, including, but not limited to, use by a class member of their Chime Account up to and extending through the Service Disruption.

21.    **"Released Parties"** means Chime, Bancorp, and Galileo, and any and all of their present or past direct or indirect heirs, executors, estates, affiliates, divisions, predecessors, successors, assigns, parents, or subsidiaries ("**Released Entities**"), and the associates, employers, employees, agents, consultants, independent contractors, insurers, directors, managers, managing directors, officers, partners, principals, members, attorneys, accountants, administrators, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, sellers, distributors, legal representatives, successors in interest, assigns and persons, firms, trustees, trusts, corporations, officers, directors, general or limited partners of any of the Released Entities, and any and all other individuals or entities in which Defendants have a controlling interest or which are affiliated with them, or any other representatives of any of these persons and entities.

22.    **"Releasing Parties"** means the Named Plaintiffs, any Settlement Class Member who does not timely and properly opt out from the Settlement, and any person claiming or receiving a benefit under this Settlement, and each of their respective spouses, children, executors, heirs, assigns, beneficiaries, successors and representatives of any kind.

23.    **"Settlement"** or **"Settlement Agreement"** means the settlement into

5

which the Parties have entered to resolve the Actions. The terms of the Settlement are as set forth in this Agreement, including the exhibits hereto.

24.     "**Settlement Administrator**" presumptively means Epiq Class Action and Claims Solutions, Inc. Lead Counsel and Defendants may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally. Similarly, Lead Counsel and Defendants may, by agreement, solicit bids for the role of the Settlement Administrator such that the all in costs for settlement administration shall not exceed two-hundred and fifty thousand dollars ($250,000.00).    In the absence of agreement, either Lead Counsel or Defendants may move the Court to substitute a different organization as Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

25.     "**Settlement Class Members**" or "**Settlement Class**" means all persons who fall within the settlement class definition set forth in Section III.

26.     "**Settlement Website**" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice, the order preliminarily approving this Settlement, the Claim Form, the complaints filed in the Actions and such other documents as Lead Counsel and Defendants agree to post or that the Court orders posted on the website.  The URL of the Settlement Website shall be agreed upon by Lead Counsel and Defendants. Settlement Class Members shall also be able to submit Claim Forms electronically via the Settlement Website.  The Settlement Website shall not include any advertising and shall remain operational until at least 5 business days after the last payment or credit under this Settlement is made or the Settlement is terminated.

27.     "**Substantiated Losses**" means financial or other losses reasonably traceable to the Service Disruption for which the Settlement Class Member submits Reasonable Documentation. Non-exhaustive examples of Substantiated Losses include late fees, declined payment fees, utility disruption or restoration fees, loss of housing, and lost wages.

## III.    <u>SETTLEMENT CLASS</u>

1.     For settlement purposes only, the Parties agree that the Court should certify the following class pursuant to Fed. R. Civ. P. 23(b)(3) (the "**Settlement Class**") defined as:

> All consumers who attempted to and were unable to access or utilize the functions of their accounts with Chime, as confirmed by a failed transaction or a locked card as recorded in Chime's

business records, beginning on October 16, 2019 through October 19, 2019, as a result of the Service Disruption.

For purposes of determining membership in the Settlement Class, Chime has identified approximately 528,000 accountholders that had an account open with Chime during the Service Disruption who experienced a transaction decline due to the processor outage and/or had an account or card locked at any time from October 16 to 19, 2019, and these criteria will be used for both determining Settlement Class membership and for purposes of notice and the validation processes described below.

2.      Excluded from the Settlement Class are the Court, the officers and directors of Defendants, persons who have been separately represented by an attorney and entered into a separate settlement agreement in connection with the Service Disruption, and persons who timely and validly request exclusion from the Settlement Class. Named Plaintiffs will move for certification of the Settlement Class contemporaneously with their motion for preliminary approval of the Settlement. For purposes of this Settlement only, Defendants agree not to contest certification of the Settlement Class.  Should the Settlement not be approved, Defendants reserve all rights and defenses on the merits and as to class certification, including any right to move to compel arbitration.

3.      For settlement purposes only, the Named Plaintiffs shall also seek, and Defendants shall not oppose, the appointment of Class Counsel as settlement class counsel, John Yanchunis as lead counsel for the settlement class, and appointment of Named Plaintiffs Ryan Richards, Ruba Ayoub, Brandy Terbay and Tracy Cummings as settlement class representatives ("**Settlement Class Representatives**").

## IV.   <u>SETTLEMENT RELIEF</u>

To compensate Settlement Class Members for inconveniences and losses as a result of the Service Disruption, and in recognition of the pendency of this class litigation and having received a demand for immediate compensation for impacted customers by Lead Counsel, Defendant Chime has already provided the following class relief to Settlement Class Members, which is recognized as playing a critical role and providing substantial benefit to the Settlement Class and is part of the Settlement relief provided:

1.      **Courtesy Payment and Transaction Credits**

   a.   Settlement Class Members with an active Chime account received a credit to their account in the amount of ten dollars ($10.00) on or about November 14, 2019; and

   b.   Settlement Class Members with an active Chime account who incurred certain transaction fees during the Service Disruption received a credit to cover those fees.

c.   The total amount of money already paid to Settlement Class Members as part of this class relief is $5,960,563.00.

To compensate Settlement Class Members for inconveniences and losses as a result of the Service Disruption, Defendants will provide the following additional relief:

**2.   Tier 1 Claims – Payment for Losses Without Documentation**

a.   Class members who attempted to and were unable to access or utilize the functions of their accounts with Chime, from October 16, 2019 to October 19, 2019, and who claim they suffered a financial or other loss because of the Service Disruption, but do not have or do not wish to provide Reasonable Documentation, will be eligible for a payment up to twenty-five dollars ($25.00). These Claims will be subject to a two-part verification process described in Section IV.6 below.

b.   Any prior money received by a Settlement Class Member from Chime in connection with the Service Disruption will be offset against the twenty-five dollars ($25.00) payment.

c.   Within 15 business days of the Effective Date, Defendants agree to provide sufficient funds to the Settlement Administrator to pay all valid Claims, net of offsets, submitted under Tier 1 up to an aggregate amount not to exceed four million dollars ($4,000,000.00) ("**Tier 1 Maximum**"). If the Settlement Administrator shall not have provided a list of accounts to which payment is due by the Effective Date, then payment shall be made no later than 15 business days after the Settlement Administrator shall have provided such information. Should the total number of valid Claims submitted under Tier 1, net of offsets, exceed the Tier 1 Maximum, each Claim shall be reduced on a *pro rata* basis. If the amount of valid Claims is less than four million dollars ($4,000,000.00), Defendants will retain any unclaimed amount ("**Tier 1 Residue**"), except to the extent that such funds are necessary to fully or partially satisfy Tier 2 claims in accordance with Section IV.3. For the avoidance of doubt, Defendants will pay only the verified claims made under this Tier 1. With exception of the Minimum Payment described in Section IV.5 below, from which both claims made under Tier 1 and Tier 2 will initially draw, Defendants are not creating a settlement fund as part of this settlement. Subject to the terms herein, Defendants will have no obligation to pay the Tier 1 Maximum unless the total value of the verified claims equals that amount.

**3.   Tier 2 Claims – Payment for Substantiated Losses**

a.   Class members who attempted to and were unable to access or utilize the functions of their accounts with Chime, from October 16, 2019 to

October 19, 2019 as a result of the Service Disruption, and who provide Reasonable Documentation of Substantiated Losses will be eligible for a payment of the amount of loss proven, up to seven hundred and fifty dollars ($750.00), but not more than the loss proven.  These Claims will be subject to a two-part verification process described in Section IV.6 below.

b.   Any prior money received by a Settlement Class Member from Chime in connection with the Service Disruption will be offset against the $750.00 (or lesser) payment.

c.   Within 15 business days of the Effective Date, Defendants agree to provide sufficient funds to the Settlement Administrator to pay all valid Claims, net of offsets, submitted under Tier 2 up to an aggregate amount not to exceed one and one-half million dollars ($1,500,000.00) ("**Tier 2 Maximum**") plus the Tier 1 Residue, if any. If the Settlement Administrator shall not have provided a list of accounts to which payment is due by the Effective Date, then payment shall be made no later than 15 business days after the Settlement Administrator shall have provided such information. Should the amount of valid Claims submitted under Tier 2, net of offsets, exceed the Tier 2 Maximum plus the Tier 1 Residue, if any, then each Claim shall be reduced on a *pro rata* basis.  If the amount of valid Claims is less than one and one-half million dollars ($1,500,000.00), Defendants will retain any unclaimed amount.   For the avoidance of doubt, Defendants will pay only the verified claims made under this Tier 2.  With exception of the Minimum Payment described in Section IV.5 below, from which both claims made under Tier 1 and Tier 2 will initially draw, Defendants are not creating a settlement fund as part of this settlement.  Defendants will have no obligation to pay the Tier 2 Maximum unless the total value of the verified claims equals that amount.

**4.     Tier Participation**

Should they timely submit a valid Claim, Settlement Class Members may participate in either Tier 1 or Tier 2, but not both.

**5.     Minimum Payment**

Taking into account the claimed amounts under either Tier One or Tier Two, Defendants shall make a minimum settlement fund payment of one and one-half million dollars ($1,500,000.00), which amount shall not under any circumstances revert to Defendants.  Should amounts claimed under Tier One and Tier Two, when combined, fail to exhaust the $1,500,000.00 fund, any such excess amounts shall be subject to a *Cy Pres*

9

distribution to the East Bay Community Law Center as directed and agreed to by the Court.

      **6.**      **Claims**

      a.    For Tiers 1 and 2, Settlement Class Members shall have until the Claims Deadline to submit a valid Claim.

      b.    Tier 1 Claims will be subject to a two-part claims and verification process. In addition to the Claim Form, Settlement Class Members seeking compensation under this tier will submit a brief explanation, under penalty of perjury, as to how the Service Disruption caused them a loss and as to the amount of loss claimed as a result of the Service Disruption. Additionally, the Settlement Administrator and Chime shall confirm according to Chime's business records that the Settlement Class Member held a Chime account and attempted a financial transaction that failed or had their card locked as a direct result of the Service Disruption.

      c.    Tier 2 Claims will be subject to the same two-part claims and verification process as described in Tier 1 except that Settlement Class Members seeking compensation under this tier additionally will be required to provide Reasonable Documentation to support their Claims.

      d.    Tier 2 Claimants who fail to submit sufficient documentation will be reclassified and processed as Tier 1 Claims.

## V.      <u>PRELIMINARY APPROVAL</u>

      1.      Class Counsel shall promptly move the Court on or before August 7, 2020 for an order granting preliminary approval of this Settlement ("**Preliminary Approval Order**"), substantially in the form of Exhibit 5. The motion for preliminary approval shall request that the Court: (1) preliminarily approve the terms of the Settlement as fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notice; (4) approve the procedures set forth in Section VII for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (5) stay the Action or otherwise adjourn litigation deadlines pending Final Approval of the Settlement; (6) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim; and (7) schedule a Final Approval hearing for a time and date convenient for the Court, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees, costs, and expenses ("**Final Approval Hearing**").

2.      Within 10 days of the filing of the motion for preliminary approval, Defendants, working with the Settlement Administrator, shall serve or cause to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b).

## VI.   SETTLEMENT ADMINISTRATOR

1.      The Settlement Administrator shall administer various aspects of the Settlement as described in Section IV and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, overseeing the payment of Claims; providing E-mail Notice to Settlement Class Members as described in Section VII; establishing and operating the Settlement Website and a toll-free number; administering the Claims processes; and distributing cash payments according to the processes and criteria set forth in Section IV and Exhibit 6.

2.      The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

a.   Obtaining from Chime the name and e-mail address of Settlement Class Members for the purpose of sending E-mail Notice to Settlement Class Members;

b.   Obtaining from Chime information necessary to establish a reasonably practical procedure to verify Settlement Class Members who attempted to and were unable to access or utilize the functions of their accounts with Chime, from October 16, 2019 to October 19, 2019;

c.   Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

d.   Establishing and maintaining the Settlement Website;

e.   Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

f.   Responding to any mailed Settlement Class Member inquiries;

g.   Processing all written notifications of exclusion from the Settlement Class;

h.   Providing weekly reports and, no later than ten days after the Opt-Out Deadline, a final report to Lead Counsel and Defendants, that summarize the number of written notifications of exclusion received that week, the total number of written notifications of exclusion received to date, and

11

other pertinent information as requested by Lead Counsel and Defendants' counsel;

i.  In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

j.  Reviewing, determining the validity of, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria set forth in Section IV and in Exhibit 6.

k.  After the Effective Date, receiving money from Defendants and processing and transmitting distributions to Settlement Class Members in accordance with Section IV;

l.  Providing weekly reports and a final report to Lead Counsel and Defendants that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims granted and denied since the prior reporting period, the total number of Claims granted and denied to date, and other pertinent information as requested by Lead Counsel and Defendants' counsel; and

m.  Performing any function related to Settlement administration at the agreed-upon instruction of both Lead Counsel and Defendants, including, but not limited to, verifying that cash payments have been distributed in accordance with Section IV.

3.  Plaintiffs and Defendants will cooperate in the selection of a claims administrator and will use best efforts to adopt a reasonable notice and claims administration process to minimize costs. Defendants will bear the notice and administration costs associated with the settlement, which shall not exceed two hundred and fifty thousand dollars ($250,000.00), and assumes the acceptance by the Court of email notice.  It is presumed, but not mandatory, that Epiq will be the Settlement Administrator as described above.

## VII.   NOTICE, OPT-OUTS, AND OBJECTIONS

1.  Upon Preliminary Approval of the Settlement, at the direction of Lead Counsel, the Settlement Administrator will implement the Notice Program provided herein, using forms substantially in the nature of the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which

Settlement Class Members may access this Agreement and other related documents and information.

2.      The Notice Program has two components: (1) E-mail Notice and (2) Notice on the Settlement Website. The Settlement Administrator shall e-mail a copy of the E-mail Notice to all Settlement Class Members for whom Chime can ascertain an e-mail address from its records with reasonable effort. For any E-mail Notices that are returned undeliverable, the Settlement Administrator shall use reasonable efforts to identify updated e-mail addresses and resend the E-mail Notice to the extent updated e-mail addresses are identified. The Settlement Administrator need make only one attempt to resend any E-mail Notices that are returned as undeliverable.

3.      The Notice shall include a procedure for Settlement Class Members to exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. This procedure will provide for the submission of an opt-out or exclusion form to be provided to Settlement Class Members by the Settlement Administrator.  Such written notification or exclusion form must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. Any written notification or exclusion form must include the individual's name and address; a statement that he or she wants to be excluded from the Action; and the individual's signature. Only one individual may be excluded from the Settlement Class per each written notification or exclusion form.  No group opt-outs from the Settlement Class shall be permitted. The Settlement Administrator shall provide the Parties with copies of all completed opt-out notifications, and a final list of all individuals who have timely and validly excluded themselves from the Settlement Class, which Lead Counsel may move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing. Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement.

4.      The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses. Objections to the Settlement or to the application for fees, costs, and expenses must be filed electronically with the Court or mailed to the Clerk of the Court. Objections need to be submitted only to the Court, and not also to Class Counsel or Defendants' counsel.  The objections will be available to the Parties on the case docket once the objections are filed by the Clerk of the Court. For an objection to be considered by the Court, the objection must be: (a) electronically filed by the Objection Deadline; or (b) mailed first-class postage prepaid to the Clerk of Court, at the address listed in the Notice, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth:

      a.   the name of the filed action;

      b.   the objector's full name, address, last four digits of Chime account number(s) and telephone number;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. all grounds for the objection, accompanied by any legal support for the objection;

e. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Awards;

f. the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

g. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and/or appellate courts in each listed case;

h. the number of times the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and/or appellate courts in each listed case;

i. any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

j. a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

k. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l. the objector's signature on the written objection (an attorney's signature is not sufficient).

5. The E-mail Notice Program shall be completed by the Notice Deadline, excluding any attempts to resend e-mails for E-mail Notices that are returned undeliverable.

6.     The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court. The Notice shall be posted on the Settlement Website by the Notice Deadline.

7.     Within seven (7) days after the Notice Deadline, the Settlement Administrator shall provide Lead Counsel and Defendants with one or more affidavits confirming that the Mail Notice Program, and posting of Notice on the Settlement Website, were completed in accordance with the Parties' instructions and the Court's approval. Lead Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Plaintiffs' motion for final approval of the Settlement.

8.     All costs and expenses associated with providing notice to Settlement Class Members including, but not limited to, the Settlement Administrator's fees, shall be borne by and separately paid by Defendants.

## VIII.   FINAL APPROVAL ORDER AND JUDGMENT

1.     Plaintiffs' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. The Final Approval Hearing shall be scheduled no earlier than 90 days after the CAFA notices are mailed to ensure compliance with 28 U.S.C § 1715.   The Settlement Administrator shall bear the obligation of mailing the CAFA notices.  By no later than 21 days prior to the Objection Deadline, Plaintiffs shall file a motion for final approval of the Settlement and a motion for attorneys' fees, costs, and expenses and for Service Awards. By no later than 14 days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards for each Class Representative. At the Final Approval Hearing, the Court will consider Plaintiffs' motion for final approval of the Settlement, and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards for each Class Representative. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the applications for attorneys' fees, costs, and expenses, and for Service Awards, provided the objectors filed timely objections that meet all of the requirements listed in Section VII paragraph 4.

2.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, and expenses, and the Service Awards. The proposed Final Approval Order that will be filed with the motion for final approval shall be in a form agreed upon by Lead Counsel and Defendants. Such proposed Final Approval Order shall, among other things:

a.   Determine that the Settlement is fair, adequate, and reasonable;

b.   Finally certify the Settlement Class for settlement purposes only;

    c.   Determine that the Notice provided satisfied Due Process requirements;

    d.   Dismiss the Actions with prejudice;

    e.   Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section IX, including during the pendency of any appeal from the Final Approval Order;

    f.   Release Defendants and the Released Parties from the Released Claims, as set forth in Section IX; and

    g.   Reserve the Court's continuing and exclusive jurisdiction over Defendants and all Settlement Class Members (including all objectors) to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## IX.   <u>RELEASES</u>

1.    As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective present or past heirs, spouses, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these Persons, whether individual, class, direct, representative, legal, equitable or any other type or in any other capacity whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from any and all Released Claims.

2.    For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under consumer protection statutes in effect in the United States or in any states and territories of the United States); causes of action under the common or civil laws of any state or territory of the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence *per se*, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure; and also including, but not limited to, any and all claims in any state or federal court of the United States for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, and any other form of relief. The Released Claims do

16

not include any claims arising from or relating to any conduct by Defendants after the date the Agreement is executed.

3.    As of the Effective Date, the Released Parties will be deemed to have completely released and forever discharged the Named Plaintiffs and the Settlement Class Representatives, the other members of the Settlement Class, and Class Counsel from and for any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, whether known or unknown, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they have or may claim now or in the future to have, relating to the institution, prosecution, or settlement of the Actions.

4.    Upon entry of the Final Approval Order, the Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

5.    The Settlement Class Members expressly waive any rights they may have under California Civil Code Section 1542, Section 20-7-11 of the South Dakota Codified Laws, and any other similar law, each of which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor, and a waiver of any similar, comparable, or equivalent provisions, statute, regulation, rule, or principle of law or equity of any other state or applicable jurisdiction.

## X.    **ATTORNEYS' FEES, COSTS, EXPENSES AND SERVICE AWARDS**

1.    <u>Service Awards</u>. Class Counsel will ask the Court to approve, and Defendants will not oppose, service awards not to exceed five hundred dollars ($500.00) for each Settlement Class Representative, which are intended to compensate such individuals for their efforts in the litigation and commitment on behalf of the Settlement Class ("**Service Awards**"). Any Service Awards approved shall be borne by and separately paid by Defendants. Neither Class Counsel's application for, nor any individual's entitlement to, a Service Award shall be conditioned in any way upon such individual's support for this Agreement.

2.    <u>Attorneys' Fees, Costs, and Expenses</u>. Defendants will pay any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel separately from and in addition to the Settlement Relief up to seven hundred fifty thousand dollars ($750,000.00). The finality or effectiveness of the Settlement will not be dependent on the Court awarding Class Counsel any particular amount on their Fee Request and shall

not alter the Effective Date. Defendants agree not to oppose Class Counsel's request for fees and reimbursement of costs and expenses up to seven hundred fifty thousand dollars ($750,000.00). Any such award of attorneys' fees, costs, and expenses shall be borne by and separately paid by Defendants. Defendants' obligation to pay such fees shall occur no earlier than the Effective Date and will be required when the time for seeking rehearing or appellate or other review of an order awarding attorney's fees and costs has lapsed, and no appeal or petition for rehearing or review has been timely filed; or the order awarding attorney's fees and costs is affirmed on appeal, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.

3. Plaintiffs and their counsel will be credited for having been a motivation for Defendant Chime to provide a ten dollar ($10.00) courtesy credits to class members (the "Prior Payment") as a result of the inconveniences caused by the Service Disruption, and for having credited transaction fees to the accounts of any affected class member associated and or incurred as a result of an attempt to use their respective Chime accounts during the Service Disruption. Defendant Chime will submit a declaration to that effect as part of the Court approval process.

4. The payment of attorneys' fees, costs, and expenses pursuant to Paragraph 2 shall be made through a wired deposit by Defendants into the attorney client trust account to be designated by Lead Counsel. After the attorneys' fees, costs, and expenses have been deposited into this account, Lead Counsel shall be solely responsible for, and shall have sole discretion in, allocating such attorneys' fees, costs, and expenses and distributing to each participating Class Counsel firm an allocated share of such attorneys' fees, costs, and expenses to that firm, and Defendants shall have no responsibility for distribution of attorneys' fees, costs, or expenses among participating firms.

5. In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses in the amount that Class Counsel requests, the remaining provisions of this Agreement shall remain in full force and effect. No order of the Court, or modification, or reversal, or appeal, of any order of the Court, concerning the amount(s) of attorneys' fees, costs, and expenses shall constitute grounds for cancellation or termination of this Agreement.

## XI.   **DEFENDANTS' CONTRIBUTIONS**

The allocation among Defendants of the amounts payable under this Settlement Agreement shall be the subject of a separate agreement among Defendants. The obligation of Defendants to make such payments shall be several, and not joint, in accordance with the terms of that agreement.

## XII.   **TERMINATION**

1. This Settlement may be terminated by either the Named Plaintiffs or Defendants by serving on counsel for the opposing Party and filing with the Court a

written notice of termination within 14 days (or such longer time as may be agreed between Lead Counsel and Defendants) after any of the following occurrences:

    a.  Lead Counsel and Defendants agree to termination before the Effective Date;

    b.  The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

    c.  An appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

    d.  The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Approval Order, or the Settlement; or

    e.  The Effective Date does not occur.

    2.    In the event of a termination as provided in Paragraph 1 of this section, this Agreement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect, and the Parties shall return to the status quo ante in the Actions as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIII.  NO ADMISSION OF LIABILITY

    1.    Defendants dispute the claims alleged in the Actions and do not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Defendants have agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Actions.

    2.    Class Counsel and Named Plaintiffs believe that the claims asserted against the Defendants, in their respective Actions, and as a whole, have merit. Nevertheless, after a thorough examination of the facts and law, the Named Plaintiffs, Lead Counsel, and Class Counsel recognize and acknowledge that the Defendants have raised factual and legal defenses including, among others, an arbitration provision that presents a substantial risk that the Named Plaintiffs and the Settlement Class may not prevail. The Named Plaintiffs, Lead Counsel, and Class Counsel also have taken into account the uncertain outcome and risks of further protracted litigation, especially in complex, costly, and time-consuming actions such as these, as well as the difficulties and delays inherent in such litigation, particularly in light of the current economic and financial hardship faced by members of the Settlement Class as a result of the Service

19

Disruption. As a result, the Named Plaintiffs believe that it is desirable that the Released Claims be fully and finally compromised, settled and resolved with prejudice, and barred pursuant to the terms set forth herein.

3.      The Named Plaintiffs and Class Counsel believe, and the Parties have agreed, that the Settlement confers substantial benefits upon the Settlement Class. Based on their comprehensive examination and evaluation of the law and facts relating to the matters at issue in the Actions, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Actions pursuant to the terms and provisions of this Agreement.

4.      The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

5.      Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Named Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Actions or in any proceeding in any court, administrative agency, or other tribunal.

## XIV.   <u>MISCELLANEOUS</u>

1.      <u>Singular and Plurals</u>. As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

2.      <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

3.      <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court disapproval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement, including securing certification of the Settlement Class for settlement purposes and the prompt, complete, and final dismissal with prejudice of the Actions as to the Defendants.

4.      <u>Obligation To Meet And Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

5.      <u>Integration</u>. This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

6.      <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

7.      <u>Governing Law</u>. The Agreement shall be construed in accordance with, and be governed by, the laws of the State of California, without regard to its choice of law or conflict of laws principles.

8.      <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through e-mail of an Adobe PDF shall be deemed an original.

9.      <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

10.     <u>Notices</u>. All notices to Lead Counsel provided for herein, shall be sent by overnight mail to:

John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N Franklin Street
Tampa, FL 33602

All notices to Defendants provided for herein, shall be sent by overnight mail to:

Thomas P. Brown
**PAUL HASTINGS LLP**

21

101 California Street
Forty-Eighth Floor
San Francisco, CA  94111

Fred Burnside
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue
Suite 3300
Seattle, WA 98104

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

11.    Authority. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

12.    No Construction Against Drafter. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed on their behalf by their authorized counsel of record, all as of the day set forth below.

**Chime Financial, Inc.**

Dated: Aug 5, 2020 _____

By: _____
Christopher Britt, CEO (Aug 5, 2020 19:14 PDT)

**The Bancorp Inc.**

Dated: _____

By: _____

**Galileo Financial Technologies, LLC (formerly known as Galileo Financial Technologies, Inc.)**

Dated: _____

By: _____

22

101 California Street
Forty-Eighth Floor
San Francisco, CA  94111

Fred Burnside
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue
Suite 3300
Seattle, WA 98104

      The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

      11.    <u>Authority</u>. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

      12.    <u>No Construction Against Drafter</u>. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

      IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed on their behalf by their authorized counsel of record, all as of the day set forth below.

**Chime Financial, Inc.**

Dated: _____       By: _____

**The Bancorp Inc.**

Dated: 8/6/2020       By: _____

**Galileo Financial Technologies, LLC**
**(formerly known as Galileo Financial**
**Technologies, Inc.)**

Dated: _____       By: _____

101 California Street
Forty-Eighth Floor
San Francisco, CA  94111

Fred Burnside
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue
Suite 3300
Seattle, WA 98104

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

11.    <u>Authority</u>. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

12.    <u>No Construction Against Drafter</u>. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed on their behalf by their authorized counsel of record, all as of the day set forth below.

**Chime Financial, Inc.**

Dated: _____          By: _____

**The Bancorp Inc.**

Dated: _____          By: _____

**Galileo Financial Technologies, LLC (formerly known as Galileo Financial Technologies, Inc.)**

Dated: 8/6/2020          By: _____
                              AE0CF1B23AAF4C0...

22

**Named Plaintiffs on behalf of the
Settlement Class**

Dated: _____        By: _____

    569F710590604CD

**Ryan Richards**

Dated: _____        By: _____

**Ruba Ayoub**

Dated: _____        By: _____

**Brandy Terbay**

Dated: _____        By: _____

**Tracy Cummings**

Dated: _____        By: _____

23

**Named Plaintiffs on behalf of the Settlement Class**

Dated: _____          By: _____

**Ryan Richards**

Dated: _____          By: _____

**Ruba Ayoub**

Dated: _____          By: _____

**Brandy Terbay**

Dated: _____          By: _____

**Tracy Cummings**

Dated: _____          By: _____

23

**Named Plaintiffs on behalf of the Settlement Class**

Dated: _____        By: _____

**Ryan Richards**

Dated: _____        By: _____

**Ruba Ayoub**

Dated: _____        By: _____

**Brandy Terbay**

Dated: 8/7/2020                 By: _____

**Tracy Cummings**

Dated: _____        By: _____

**Galileo Financial Technologies, LLC (formerly known as Galileo Financial Technologies, Inc.)**

Dated: _____        By: _____


**Named Plaintiffs on behalf of the Settlement Class**

Dated: _____        By: _____

**Ryan Richards**

Dated: _____        By: _____


**Ruba Ayoub**

Dated: _____        By: _____


**Brandy Terbay**

Dated: _____        By: _____


**Tracy Cummings**

Dated: _____        By: _____

23