# Exhibit B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RYAN RICHARDS, RUBA AYOUB, BRANDY TERBAY AND TRACY CUMMINGS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>CHIME FINANCIAL, INC., GALILEO FINANCIAL TECHNOLOGIES, INC., and THE BANCORP INC.,<br><br>        Defendants. | Case No. 4:19-cv-06864-HSG<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL, AWARDING REASONABLE ATTORNEYS' FEES, COSTS AND SERVICE AWARDS; AND ENTERING FINAL JUDGMENT**<br><br>Judge:        Hon. Haywood S. Gilliam, Jr.<br>Complaint Filed:  October 22, 2019 |

This matter is before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement, and Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses, and Service Awards. Plaintiffs, individually and on behalf of the proposed settlement class, and Defendants have entered into an Amended Stipulation of Agreement and Settlement and Release ("Settlement Agreement") that settles the above-captioned litigation.  Having considered the motions, the Settlement Agreement together with all exhibits and attachments thereto, the record, and the briefs and oral argument in this matter, **IT IS HEREBY ORDERED** as follows:

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the same meaning ascribed to those terms in the Settlement Agreement.

2.      The Court has jurisdiction over this litigation, Plaintiffs, Defendants, and Settlement Class Members, and any party to any agreement that is part of or related to the Settlement Agreement.

<u>**BACKGROUND**</u>

3.      This Action was brought by Plaintiffs, individually and on behalf of a class of similarly situated customers, against Defendants Chime Financial, Inc. ("Chime"), The Bancorp Inc. ("Bancorp"), and Galileo Financial Technologies, LLC (formerly known as Galileo Technologies, Inc.) ("Galileo") (collectively, "Defendants"), arising from an intermittent disruption in service for portions of the period of time between October 16, 2019 and October 19, 2019 (the "Service Disruption").

4.      From October 16, 2019 to October 19, 2019, certain Chime accountholders experienced intermittent disruptions in service.  For example, for approximately four and a half non-consecutive hours during the Service Disruption, card purchases for certain members were unavailable; and for approximately 60 hours, certain members could not transfer money from their Chime accounts.  These issues were intermittent during the Service Disruption period and did not impact all Chime customers. Rather, in connection with the Action and the Settlement, Defendants have identified approximately 528,000 accountholders that had an account open with Chime during the Service Disruption who experienced a transaction failure or had an account or card

locked during the Service Disruption.

5.      Plaintiffs initially filed this action on October 22, 2019. *See* Dkt. No. 1. The parties thereafter stipulated to pursue early dispute resolution (Dkt. No. 11) and engaged in settlement conferences with Magistrate Judge Laurel Beeler. *See* Dkt. No. 28. On February 6, 2020, the parties attended an initial settlement conference with Judge Beeler. *See id*. Following the conference, the parties exchanged settlement proposals and discussed resolution of this action. *See* Dkt. No. 40-8, Ex. B at ¶¶ 18–19. On March 20, 2020, the Court granted the parties' request to stay the matter while they continued their settlement negotiations. *See* Dkt. No. 31. On May 7, 2020, the parties attended an additional settlement conference before Judge Beeler. *See* Dkt. No. 35. On May 12, 2020, with Judge Beeler's assistance, the parties reached an agreement in principle. *See* Dkt. No. 40-8, Ex. B at ¶ 19. The parties entered into a written settlement agreement in early August 2020. *See* Dkt. No. 40-1, Ex. A. Plaintiffs then filed the unopposed motion for preliminary settlement approval on August 7, 2020. *See* Dkt. No. 40.

6.      On September 24, 2020, the Court held a hearing on the motion. *See* Dkt. No. 44. At the hearing, the Court raised minor points for clarification about the Settlement, specifically, the Court requested the Parties consider: (1) whether the additional language in Section IX Paragraph 2 of the settlement agreement regarding the scope of the release should be removed as redundant or clarified so as to avoid confusion, and (2) whether the language requiring objectors to include the number of times the objector or his or her counsel has objected to a class action in Section VII Paragraph 4 should be removed as to the amended settlement agreement. *Id.*

7.      In response, the Parties met, discussed, and agreed to an Amended Stipulation of Agreement and Settlement and Release, which was filed on October 8, 2020. Dkt. No. 45-4, Ex. 4 ("SA"). The Amended Settlement Agreement simplified the objection process and clarified the release language as suggested by the Court. *See, e.g.*, Dkt. No. 45-1, Exh. 1, at 15, 17.  On October 28, 2020, the Court preliminarily approved the settlement. Dkt. No. 46.

8.      In accord with the Court's Scheduling Order regarding the Settlement, (Dkt. No. 48), Plaintiffs filed their Motion for Attorneys' Fees, Costs, and Expenses, and Service Awards

("Motion for Fees") on December 30, 2020, (Dkt. No. 49), and their Motion for Final Approval on March 1, 2021, (Dkt. No. __).

<u>**SETTLEMENT AGREEMENT**</u>

9.     The key terms of the parties' Settlement are as follows:

<u>Class Definition</u>: The Settlement Class is defined as:

> All consumers who attempted to and were unable to access or utilize the functions of their accounts with Chime, as confirmed by a failed transaction or a locked card as recorded in Chime's business records, beginning on October 16, 2019 through October 19, 2019, as a result of the Service Disruption.

SA at ¶ III.1.

<u>Settlement Benefits</u>:

The parties have agreed to monetary relief that incorporates an offset for credits that Chime already provided to the accounts of active customers because of the outage:

- Approximately a month after the outage, Chime credited $10 to the accounts of all impacted customers as a "courtesy payment" because of the outage. SA at ¶ IV.1.a.

- Chime also credited the accounts of those customers who incurred "certain transaction fees" during the outage to cover those fees as a "transaction credit." *Id.* at ¶ IV.1.b.

The parties agree that these courtesy payments and transaction credits total $5,960,563 already paid to impacted Chime account holders due to the outage. *Id.* at ¶ IV.1.c. Defendants also concede that this litigation was "a motivation" for making these payments. SA at ¶ X.3. Pursuant to the settlement agreement, Defendants have agreed to further compensate settlement class members who submit verified claims under a two-tier system:

- Tier 1: Class members who claim they suffered loss due to the outage, but who do not have or do not wish to provide documentation to substantiate their loss will be entitled to up to $25 for verified claims. *See id.* at ¶ IV.2. Defendants' aggregate total potential payment under Tier 1 is $4 million. *See id.* at ¶ IV.2.c. If the amount of verified claims under Tier 1 is less than $4 million, Defendants will retain any

1     unclaimed amount, except to the extent that such funds are necessary to fully or

2     partially satisfy Tier 2 claims. *Id.*

3     • Tier 2: Class members who claim they suffered loss due to the outage and have

4       "reasonable documentation" to substantiate their loss will be entitled to up to $750,

5       but not more than their verified loss. *See id.* at ¶ IV.3. Those who fail to provide

6       documentation will be considered under Tier 1. Defendants' aggregate total

7       potential payment under Tier 2 is $1.5 million, plus any residual money unclaimed

8       under Tier 1. *See id.* at ¶ IV.6.d.  If the amount of verified claims under Tier 2 is

9       less than $1.5 million, Defendants will retain any unclaimed amount.

10    10.    All claims under both Tiers will be verified using a two-step system. *See id.* at ¶

11    IV.6.b. Under both Tiers, putative class members needed to submit a brief explanation, under

12    penalty of perjury, as to how the outage caused them loss and what amount of loss they purport to

13    have suffered. *See id.* Those submitting claims under Tier 2 were also required to submit

14    reasonable documentation to support their claims. *Id.* at ¶ IV.6.c. Defendants and the Settlement

15    Administrator may then confirm through Chime's business records that the putative class member

16    (a) held a Chime account at the time; and (b) either attempted a financial transaction that failed or

17    had their card locked as a result of the outage. *Id.* at ¶ IV.6.b.

18    11.    And under the settlement agreement, "[a]ny prior money received by a Settlement

19    Class Member from Chime in connection with the Service Disruption will be offset against" the

20    payment. *See id.* at ¶¶ IV.3.a, IV.3.b. Thus, any verified claims under Tier 1 and Tier 2 will be

21    reduced by the amount the class member already received as a (1) courtesy payment; or (2)

22    transaction credit. *See id.* At a minimum, however, Defendants will pay $1.5 million under the

23    settlement agreement. *See id.* at ¶ IV.5.

24    12.    *Cy Pres* Distribution: If the claim payments under Tiers 1 and 2 do not reach the

25    $1.5 million minimum under the settlement agreement, Defendants will distribute funds to reach

26    this minimum to the East Bay Community Law Center as the *cy pres* recipient. *See SA* at ¶ IV.5.

27    Defendants will, however, keep any money available for settlement but unclaimed above this $1.5

28

1    million threshold. *Id.*

2           13.    <u>Release</u>: All settlement class members will release:

3                      [A]ny and all claims, demands, rights, actions or causes of action,
                       liabilities, damages, losses, obligations, judgments, suits, penalties,
4                      remedies, matters and issues of any kind or nature whatsoever,
                       whether known or unknown, contingent or absolute, existing or
5                      potential, suspected or unsuspected, disclosed or undisclosed,
                       matured or unmatured, liquidated or unliquidated, legal, statutory or
6                      equitable, that have been or could have been asserted, or in the future
                       might be asserted, in the Actions or in any court, tribunal or
7                      proceeding by or on behalf of the Named Plaintiffs, any and all of
                       the members of the Settlement Class, and their respective present or
8                      past heirs, spouses, executors, estates, administrators, predecessors,
                       successors, assigns, parents, subsidiaries, associates, affiliates,
9                      employers, employees, agents, consultants, independent
                       contractors, insurers, directors, managing directors, officers,
10                     partners, principals, members, attorneys, accountants, financial and
                       other advisors, investment bankers, underwriters, lenders, and any
11                     other representatives of any of these Persons, whether individual,
                       class, direct, representative, legal, equitable or any other type or in
12                     any other capacity whether based on federal, state, local, statutory
                       or common law or any other law, rule or regulation, including the
13                     law of any jurisdiction outside the United States, against any or all
                       of the Released Parties, which the Named Plaintiffs or any member
14                     of the Settlement Class ever had, now has, or hereinafter may have,
                       by reason of, resulting from, arising out of, relating to, or in
15                     connection with, the allegations, facts, events, transactions, acts,
                       occurrences, statements, representations, omissions, or any other
16                     matter, thing or cause whatsoever, or any series thereof, embraced,
                       involved, set forth or otherwise related to the alleged claims or
17                     events in the Action or the Service Disruption, including, but not
                       limited to, use by a class member of their Chime Account up to and
18                     extending through the Service Disruption.

19   SA at ¶ II.20. In addition, class members:

20                     waive any rights they may have under California Civil Code Section
21                     1542, Section 20-7-11 of the South Dakota Codified Laws, and any
                       other similar law, each of which provides that a general release does
22                     not extend to claims which the creditor does not know or suspect to
                       exist in his favor at the time of executing the release, which if known
23                     by him must have materially affected his settlement with the debtor,
24                     and a waiver of any similar, comparable, or equivalent provisions,
                       statute, regulation, rule, or principle of law or equity of any other
25                     state or applicable jurisdiction.

26

27

28

1    *Id.* at ¶ IX.4.

2                      **CERTIFICATION OF SETTLEMENT CLASS**

3          14.    Pursuant to Federal Rule of Civil Procedure 23, the Court certifies, for settlement

4    purposes only, the Settlement Class defined as follows:

5          All consumers who attempted to and were unable to access or utilize the functions

6          of their accounts with Chime, as confirmed by a failed transaction or a locked card

7          as recorded in Chime's business records, beginning on October 16, 2019 through

8          October 19, 2019, as a result of the Service Disruption.

9    Excluded from the Settlement Class are the Court, the officers and directors of Defendants, persons

10   who have been separately represented by an attorney and entered into a separate settlement

11   agreement in connection with the Service Disruption, and persons who timely and validly request

12   exclusion from the Settlement Class.  The Settlement Class is comprised of approximately 528,000

13   individuals as identified in Chime's business records.   This list of approximately 528,000

14   individuals was used for the notice to the Settlement Class and will act to further define the

15   Settlement Class and as part of the validation process for claims.

16         15.    The Court reaffirms, and incorporates by this reference, its previous finding that

17   this Action is properly maintained as a class action, for settlement purposes only, pursuant to

18   Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e). The Court finds that the Settlement

19   Class satisfies the requirements of Federal Rule of Civil Procedure 23(a): the Settlement Class is

20   numerous; there are questions of law or fact common to the Settlement Class; the Settlement Class

21   Representatives' claims are typical of those of Settlement Class Members; and the Settlement

22   Class Representatives and Class Counsel will fairly and adequately protect the interests of the

23   Settlement Class.

24         16.    The Court finds that the Settlement Class satisfies the requirements of Federal Rule

25   of Civil Procedure 23(b)(3): the questions of law or fact common to the Settlement Class

26   predominate over individual questions, class action litigation is superior to other available methods

27

28

for the fair and efficient adjudication of this controversy, and Defendants have acted or refused to act on grounds that apply generally to the Settlement Class.

17.    The Court hereby appoints as Settlement Class Representatives: Ryan Richards, Ruba Ayoub, Brandy Terbay and Tracy Cummings.

18.    The Court hereby appoints:

      a.    Lead Settlement Class Counsel: John Yanchunis of Morgan & Morgan Complex Litigation Group

      b.    Class Counsel: Patrick A. Barthle II of Morgan & Morgan and Joshua H. Watson of Clayeo C. Arnold, APC.

**FINAL APPROVAL**

19.    Rule 23(e) requires judicial approval of the compromise of claims brought on a class basis.  Amended Rule 23(e) standardizes the factors governing final approval, stating that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

20.    The Court reaffirms, and incorporates by this reference, its previous finding that the Settlement is fair, reasonable, and adequate under Rule 23.  The Court has reviewed the terms

of the proposed Settlement Agreement, the exhibits and attachments thereto, Plaintiffs' motion papers and briefs, and the declarations of counsel. Based on its review of these papers, the Court finds that the Settlement Agreement appears to be the result of serious, informed, non-collusive negotiations conducted at arms-length between Plaintiffs' Counsel and Defendants' Counsel and overseen by an experienced neutral in Magistrate Judge Beeler. The terms of the Settlement Agreement do not improperly grant preferential treatment to any individual or segment of the Settlement Class, and are fair, reasonable, and adequate considering the costs, risks, and delay of trial and appeal.

21.     The Court therefore **GRANTS** final approval of the Settlement Agreement and all of the terms and conditions contained therein, including the releases.

## **NOTICE & ADMINISTRATION**

22.     The Court reaffirms and finally appoints Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Settlement Administrator to fulfill the duties of the Settlement Administration set forth in the Settlement Agreement**.**

23.     The Court finds that the Notice and Notice Plan set forth in the Settlement Agreement and as implemented by the Settlement Administrator satisfied the requirements of due process and Federal Rule of Civil Procedure 23, and provided the best notice practicable under the circumstances. The Notice and Notice Plan were reasonably calculated to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing.

## **EXCLUSIONS AND OBJECTIONS**

24.     The Court has reviewed the list of Settlement Class Members requesting exclusion. Dkt. No. __. All six of these individuals timely requested exclusion and, therefore, the Court excludes these individuals from the Settlement and all relief provided therein, including any release.

25.     All Settlement Class Members who did not opt out and exclude themselves are bound by the terms of the Settlement Agreement upon entry of this Final Approval Order and Judgment.

26.     The Court has reviewed the objection of Patricia Sweeney. Dkt. No. 51. Ms. Sweeney objects solely to the amount of attorneys' fees, costs, and expenses, arguing that because compensation paid under Tiers 1 and 2 is contingent upon the amount claimed within those Tiers, with funds potentially reverting to Defendants if the full amounts under the Tiers are not claimed, attorney's fees could be disproportionate, amounting to "around 37% of the actual amount brought to the class members." Dkt. No. 51 at 2. As explained further below regarding Plaintiffs' Motion for Fees, Ms. Sweeney's objection ignores the constructive common fund method, including the amounts already provided to Class Members without the need for filing any claim. Plaintiffs' fee, cost, and expense request of $750,000 represents just 6% of the total amount made available by the Settlement, and only 9.7% of the minimum amount Defendants are required to pay under the agreement—an eminently reasonable request considering the 25% benchmark in this Circuit. Accordingly, the objection is overruled. In any event, Ms. Sweeney raised no objection to the substantive terms of the class relief provided by the Settlement and she raises no argument as to why final approval should not be granted.

## SERVICE AWARDS

27.     The district court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to

determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013). Here Plaintiffs are seeking service awards of $500 each. The Court finds these service awards are reasonable given Plaintiffs' protection of the Settlement Class' interests, the benefits from the Settlement, and the efforts of Plaintiffs in pursuing this case, and hereby awards service awards of $500 each, to Plaintiffs Ryan Richards, Ruba Ayoub, Brandy Terbay, and Tracy Cummings, to compensate them for their commitments and efforts on behalf of the Settlement Class Members. Defendants shall pay such amounts pursuant to the terms of the Settlement. The Court finds that the requested service awards are reasonable, appropriate, and justified by the circumstances of the Plaintiffs' efforts and commitments on behalf of the Class.

## ATTORNEYS' FEES, COSTS, AND EXPENSES

28.     Class Counsel requests an award of $750,000 in attorneys' fees, costs, and expenses. Dkt. No. 49. Defendants do not oppose the request. Dkt. No. 50. The record is undisputed that the settlement negotiation was overseen by an experienced mediator and negotiated only after all relief was obtained for the Settlement Class and therefore free from any collusion. *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2017 WL 1047834, at *4 (N.D. Cal., Mar. 17, 2017 ("Volkswagen's agreement not to oppose the application does not evidence collusion and was not obtained by Class Counsel to Class Members' detriment."); *G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

29.     "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) (same). "[T]he choice between lodestar and percentage calculation depends on the circumstances, but [ ] 'either method may ... have its place in determining what would be reasonable compensation for creating a common fund.'" *Six Mexican Workers v. Ariz. Citrus*

*Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (ellipsis in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). The Ninth Circuit also "encourage[s] courts to guard against an unreasonable result by cross-checking their calculations against a second method." *In re Bluetooth*, 654 F.3d at 944-45.

30.     In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value, including the monetary and non-monetary recovery. *See Six Mexican Workers*, 904 F.2d at 1311; *see also Staton*, 327 F.3d at 974 ("[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained ... courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method ...."). The benchmark percentage "can then be adjusted upward or downward to account for any unusual circumstances involved in the case." *Paul, Johnson, Alston & Hunt v. Graulty, 88*6 F.2d 268, 272 (9th Cir. 1989). Many cases have found that between 30% and 50% of the common fund is an appropriate range when the settlement fund is less than ten million. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (collecting cases); *see also Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a fee award of 30% of the settlement fund in a food labeling class action).

31.     Here the Settlement provides for a constructive common fund.  As explained above, $5,960,563 has already been paid or credited to Settlement Class Members as part of the class relief in this case.  SA § IV.1.c.  Settlement Class Members can also make claims for losses under Tiers 1 and 2 up to an aggregate total $5.5 million.  SA §§ IV.2.c., IV.3.c, and IV.5.  Likewise, Defendants are separately paying for: (1) the costs of notice and administration of up to $250,000, (SA §§ VI.3, VII.8), the requested attorneys' fees, costs, and expenses of up to $750,000; and up to $500 in service awards per Settlement Class Representative, an additional up to $2,000, (S.A. §§ X.1, X.2). Such separate payment by Defendants for notice and administration, fees and costs, and service awards, should be included in valuing the total benefit to the class and hence the total constructive fund from which Plaintiffs' fee request is judged because if such amounts were not paid separately, class members would have to pay them directly out of the fund. *Manual for*

*Complex Litigation* § 21.7 at 335 (4th ed.) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney's fees and expenses … the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class.").

32.     The Ninth Circuit has recognized this constructive common fund approach, *Shaffer v. Cont'l Cas. Co.*, 362 Fed. Appx. 627, 631–32 (9th Cir. 2010), as have other courts within the Ninth Circuit and in this District.[1]

33.     "To calculate appropriate attorneys' fees under the constructive common fund method, the court looks to the maximum settlement amount that could be claimed." *Evans*, 2014 WL 1724891, at *6 (citing *Nwabueze*, 2013 WL 6199596, at *11).[2]  This is done by aggregating all amounts payable under the settlement, including, for example, potential claims-made payments, amounts for fees and costs, and amounts for notice and administration. *See, e.g.*, *Evans*, 2014 WL 1724891, at *6 (aggregating amounts to be repaid to class members in cash, amounts to be repaid in virtual currency, amounts to be otherwise paid in cash or virtual currency, as well as amounts for fees and costs and notice costs, to reach a total settlement value against which the fee request was analyzed).

---

[1] *See, e.g.*, *Evans v. Linden Research, Inc.*, C-11-01078 DMR, 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014) ("The court will evaluate the requested fee under the percentage method and analyze the recovery obtained as a constructive common fund."); *Nwabueze v. AT & T Inc.*, C 09-01529 SI, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) ("Where, as here, a settlement does not create a common fund from which to draw, the Ninth Circuit may analyze the case as a 'constructive common fund' for fee-setting purposes.") (citing *Bluetooth*, 654 F.3d at 940–41); *Guschausky v. Am. Family Life Assur. Co. of Columbus*, 851 F. Supp. 2d 1252, 1259 (D. Mont. 2012), *vacated on other grounds*, CV 10-59-H-DWM, 2012 WL 4849688 (D. Mont. Oct. 11, 2012) ("While the settlement might not have created a traditional common fund, it created a constructive common fund . . . . There is not a definitive sum of money that has been set aside for settlement claims, but the Court can reasonably estimate the settlement value, as explained above.  That sum, when aggregated with the independent payment of attorney's fees, creates a constructive common fund.") (internal citations omitted) (citing *Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000)).

[2] *See also Nwabueze*, 2013 WL 6199596, at *11 ("To calculate appropriate attorneys' fees under the constructive common fund method, the Court should look to the maximum settlement amount that could be claimed.") (citing *Lopez v. Youngblood*, No. CV–F–07–0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 1, 2011); *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, No. 06–02069, 2011 WL 31266, at *5 n.5 (N.D. Cal. Jan. 5, 2011)).

34.     All combined, the relief made available via the Settlement—and, thus, the constructive common fund—amounts to $12,462,563.[3]  Plaintiffs' fee, cost, and expense request of $750,000 represents just 6% of this total—an eminently reasonable request considering the 25% benchmark in this Circuit. Even if the Court were only to consider the amounts already provided to Class Members ($5,960,563), the amounts for notice and administration ($250,000), and the required minimum payment of $1.5 million related to Tiers 1 and 2—amounts which Defendants are required to pay (or have already paid) and are not dependent on claims rates or other contingencies—it amounts to $7,710,563, making Plaintiffs' request only 9.7% of the total.  Again, a sum far below the 25% benchmark.

35.     Further, considering the lodestar information submitted by counsel in support of the Motion for Fees as a cross-check against the percentage analysis, (*see* Dkt. Nos. 49-1, 49-2), the Court finds that the rates submitted by counsel are fair and reasonable considering their backgrounds and experience, and that the time spent is likewise reasonable. Were the Court to utilize the lodestar analysis, Plaintiffs' request would represent a 2.467 multiplier (solely for time up through the filing of the Motion for Fees). In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Vizcaino*, 290 F.3d at 1051 n. 6 (approving multiplier of 3.65 and citing cases approving multipliers averaging 3.32 and as high as 19.6); *see also Parkinson v. Hyundai Motor Am*., 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or even higher.") (citations omitted); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (awarding 5.2 multiplier; citing cases approving multipliers ranging from 4.7 to 19.6); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (multiplier of 3.6 was

---

[3] $5,960,563 (relief already provided) + $5,500,000 (total available under Tiers 1 and 2) + $250,000 (notice and administration costs) + $750,000 (attorneys' fees, costs, and expenses) + $2,000 (service awards) = $12,462,563.  As discussed supra, subject to the terms of the Settlement Agreement, Defendants are not creating a settlement fund beyond the $1.5 million dollars from which the Tier 1 and Tier 2 claims will initially draw, but instead will only pay validated claims up to the Tier Maximums.  Should the validated amounts claimed not reach the Tier Maximums, Defendants will retain those funds.

"well within the acceptable range for fee awards in complicated class action litigation" and stating that "[m]ultipliers in the 3-4 range are common"). The Court finds that, as a cross-check, a 2.467 multiplier would be reasonable here.

36.     Accordingly, the Court finds that Plaintiffs' request for $750,000 in fees, costs, and expenses is fair and reasonable considering the substantial amounts made available via the Settlement, and comprising only 6% of the constructive common fund, and thus Plaintiffs' fee request is **GRANTED**.

## CONCLUSION

Based on the foregoing, **IT IS ORDERED THAT**:

37.     Plaintiffs' Motion for Final Approval (Dkt. No. __) is **GRANTED**.

38.     The court hereby **grants final approval** to the parties' Amended Stipulation of Agreement and Settlement and Release ("Settlement Agreement") (Dkt. No. 45-4). The Court finds that the Settlement Agreement is fair, adequate, and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

39.     Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses, and Service Awards (Dkt. No. 49) is **GRANTED** as set forth herein.

40.     The settlement class is certified, for settlement purposes, under Federal Rule of Civil Procedure 23: All consumers who attempted to and were unable to access or utilize the functions of their accounts with Chime, as confirmed by a failed transaction or a locked card as recorded in Chime's business records, beginning on October 16, 2019 through October 19, 2019, as a result of the Service Disruption.

41.     The form, manner, and content of the Notice and Notice Program meet the requirements of Federal Rules of Civil Procedure 23(c)(2) and due process.

42.     Plaintiffs Ryan Richards, Ruba Ayoub, Brandy Terbay and Tracy Cummings shall be paid a Service Award payment of $500 in accordance with the terms of the Settlement Agreement.

43.     Class counsel shall be paid $750,000 in attorney's fees, costs, and expenses in accordance with the terms of the Settlement Agreement.

44.     The court approves the designation of the East Bay Community Law Center as the *cy pres* beneficiary pursuant to the Settlement Agreement.

45.     All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the Released Parties (as defined in the Settlement Agreement). Such Releasing Parties are barred and enjoined from asserting any of the Released Claims, as set forth in the Settlement Agreement, including during the pendency of any appeal from this Final Approval Order.

46.     Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

47.     Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

48.     Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated:_____, 2021

_____
The Honorable Haywood S. Gilliam, Jr.
U.S. District Judge